## WRIGHT *et al. v.* LECLAIRE.

Courts of equity are within the spirit, if not the words, of statutes of limitations.

In many, and perhaps most cases, they act upon the *analogy* of the limitations at law, while in others, they act not so much in analogy, as in *obedience* to such statutes.

The fourth section of the statute of limitations, approved February 15, 1843, is not applicable to a suit in chancery to enforce the specific performance of a contract to convey real estate.

Actions in chancery to enforce the specific performance of contracts relating to realty, are not barred by a lapse of six years after the right or title accrues.

Such actions must be governed by the seventh section of the limitation act of 1843, which limits the right of action to twenty years, unless the case comes within the proviso of that section.

In such actions generally, the statutory bar for commencing actions at law relating to real estate, is the guide; but the relief may be denied, even when a less number of years may have elapsed, and it may be granted where the time is greater.

In cases of concurrent jurisdiction, courts of equity, equally with courts of law, are bound by the statute of limitations, and may be said to act in obedience to such statute; and in such cases, a change of forum, will not extend the time for commencing the action.

In cases where the jurisdiction is not concurrent, courts of equity apply the statute of limitations in many, and indeed most instances, to equitable titles, by way of analogy to the law.

Courts of law do not possess concurrent jurisdiction with courts of equity, to enforce the specific performance of contracts.

The rule, that where a party has concurrent remedies, he cannot, by a change of forum, extend his right to commence his action, applies only where the party seeks in equity, by reason of some peculiar circumstances, to obtain or recover that which might be recovered at law.

A suit to enforce the specific execution of a contract to convey real estate, is just as much an action to recover the land, as an action of ejectment is, where the party relies upon his legal title.

After service, or voluntary appearance, a party to a suit is in court, and must take notice of what is done therein up to the time of final judgment, and by all such proceedings is bound; but after judgment, he is not further bound to take notice.

After judgment, the case, and the necessity for the presence of the party, is presumed to be at an end; and if the opposite party would take any further step, he must give his adversary an opportunity to be present, and be heard.

To set aside a judicial sale, on motion, without notice, or showing that the op-

posite party voluntarily appeared, in no manner binds the latter, and the party making the motion, can derive no advantage therefrom.

On the 14th of December, 1840, L. C. sold to G. out-lots 25 and 26, in L. C.'s second addition to the town of Davenport, and executed to G. the usual bond for a conveyance, by good and sufficient warranty deed. G. was to pay $500 for the lots; $75 of which was paid at the time, $150 to be paid on June 1, 1841, and the balance in two equal installments, in twelve and eighteen months from the date of the contract. G. never resided in this state, nor have his heirs resided here since his death. G. died in Ohio, July 9, 1844, leaving eight children, all of whom, except one, were minors, and three were still minors on the 25th of April, 1834. At the October term, 1842, of the Scott District Court, L. C. brought suit against G. for the unpaid purchase money due on the bond, to which the defendant appeared by attorney, and a judgment by *nil dicit* was rendered in favor of L. C. at the June term, 1843, for the sum of $464.20, the amount of the principal and interest due on the lots. On the 10th of July, 1843, an execution issued on this judgment, and on the 26th of August following, the sheriff, by virtue of said execution, sold, and L. C. purchased, the southeast quarter of section 14, township 78, range 4, for $373.33, and said out-lots 25 and 26, for $66.66 each. This sale was made under the valuation law of 1843. At the March term, 1844, without notice to G. a motion was made by L. C., to set aside this sale, the cause for which is not shown; which motion was sustained, and a new execution ordered. On the 26th of March, 1844, a second execution issued on said judgment, under which the sheriff sold, and L. C. purchased the quarter section above described, for $270; the two lots for $65 each; and lot four in block 63, for $124, making in all $514. At the time of the second sale, the judgment, interest and costs (including the costs on the first execution), amounted to $523.31. When the first sale was set aside, no order was made as to which party should pay the costs attending the same. L. C. receipted the execution in full, for his judgment and interest. The property not being redeemed, the sheriff executed to L. C. a deed for the property. Lot four in block 63, was sold and conveyed by L. C. to G. There is no evidence to show that G. was in this state, subsequent to May, 1841. About the time of G.'s death, his widow and the older children, knew something of his having purchased certain lots of L. C. in Iowa, but had the impression that their rights were forfeited by neglect, or failure to make payment, and had no expectation of any benefit therefrom, until about April, 1854, when one of the heirs first visited Davenport on other business. It does not appear positively, that the widow and children of G. had knowledge of the bond to convey the out-lots, at the time of his death, or that they possessed such knowledge for more than six years prior to April 25th, 1854. In April, 1854, the heirs of G. in writing, demanded of L. C. a specific performance of the contract to convey the out-lots, at their own costs, and offered to pay all sums of money that might be owing on the contract. L. C. refused to convey. For some years after the contract with G. property in Davenport depreciated, but it has since greatly increased in value. On a bill filed by the heirs of G. to compel a conveyance;

Wright et al. v. Leclaire.

*Held,* 1. That the complainants were not barred by the lapse of six years after their right or title accrued, from prosecuting their suit.

2. That the judgment against G. and the sale of the premises, under the same, did not extinguish the right of the complainants to call for a specific performance of the contract.

3. That L. C. having elected to hold G. to a performance of the contract, by suing on the notes and collecting the money, held the lots in trust for the complainants, and should be required to convey the same.

4. That G. having appeared by attorney in the suit at law on the notes, his heirs could not, without a stronger showing than is made in this case, go back of the judgment, and show that it was rendered for too much.

5. That the first sale on execution having been set aside, without notice to G., L. C. could derive no advantage thereby, and was liable to the complainants for the amounts bid at that sale, on the property.

## *Appeal from the Scott District Court.*

BILL in chancery to enforce the specific performance of a contract relating to certain out-lots in the city of Davenport. The case was heard on the pleadings, exhibits and depositions, and the issues found for the defendant. From a record covering nearly two hundred pages, we gather that the facts are substantially these: On the 14th of December, 1840, the defendant sold to one John A. Gano (the father of the complainants), said out-lots, being twenty-five and twenty-six in his second addition to the town of Davenport. He executed to Gano the usual bond for the conveyance of these lots, by good and sufficient warranty deed. Gano was to pay for the lots five hundred dollars, seventy-five of which was paid at the time, one hundred and fifty dollars to be paid on the first day of June, 1841, and the balance in two equal installments in twelve and eighteen months, from the date of the contract. Gano never resided in this state, nor have his heirs, the complainants herein. Gano died on the 9th day of July, 1844, in Cincinnati, Ohio. The complainants were never in this state, after the death of their father, until the year 1853, and this suit was commenced in April, 1854. At his death, he left eight children, all of whom were minors except one, and three were still under age at the time of the commencement of this suit. There is some testimony tend-

ing to show, that defendant received the sum of seventy-five dollars on this contract, in the spring of 1841, but not sufficient to overcome the sworn denial of the payment made in the answer.

At the October term, 1842, of the Scott county District Court, defendant brought suit against Gano, for the unpaid purchase money due on this bond. To this suit, defendant appeared by his attorney, and a judgment by *nil dicit* was rendered in favor of plaintiff, at the June term, 1843, for $464.20, the amount of the principal and interest of the remaining payments due on said lots. On the 10th of July, 1843, an execution was issued on this judgment, and on the 26th of August next after, by virtue of said execution, the sheriff sold, and the defendant purchased, the following property of said John A. Gano, for prices following: southeast quarter section 14, township 78, range 4, for $373.33⅓; and said out-lots 25 and 26, for $66.66 each. This sale was made under the "valuation law," of 1843. At the March term, 1844, without notice to Gano, a motion was made by Leclaire, to set aside this sale, which was sustained, and a new execution ordered. The cause for setting it aside, is not shown. We infer, however, that it was because the property was sold under said "valuation law," such sales having been held irregular about that time by our courts. And then afterwards, on the 26th of March, 1844, a second execution issued on said judgment, and thereunder the sheriff sold, and the defendant herein purchased the following property of said Gano, for prices following. The quarter section before mentioned for $270; the two out-lots for 65 dollars each; and lot 4, block 63, for 124 dollars, making in all 514 dollars. At that time, the judgment, interest and costs (including the costs on the first execution), amounted to $523.31. When the first sale was set aside, no order was made as to which party should pay the costs attending the same. The amount of such costs is not conclusively shown, but the probable amount is $9.26. The plaintiff in that suit, receipted the execution in full for his judgment and interest. This property was not redeemed, and in due time the sheriff exe-

cuted to him a deed in proper form.   In April, 1854, and before the commencement of this suit, the complainants in writing, demanded of defendant the specific performance of said contract of December, 1840, at their own costs, and offered to pay any and all sums of money that might be due or owing on said contract.   The performance was refused, and their right to ask the same denied.   There is nothing to show that Gano was in this state subsequent to May, 1841. The weight of the testimony is, that at or about the time of Gano's death, his widow and the older children, knew something of his having purchased certain lots of Leclaire in Iowa, but had the impression that their rights were forfeited by neglect or failure to make payments, and had no expectation of any benefit therefrom, until about the time of the commencement of this suit, when one of the heirs first visited Davenport, on other business.   Lot 4, block 63, sold on the execution aforesaid, was sold by the defendant to Gano, for which he held his deed.   That the children or widow had knowledge of this bond or contract to convey, at the time of his death, is not positively shown; nor is it shown that they had such knowledge more than six years prior to the commencement of this suit.   For some years after the contract with Gano, property in Davenport greatly depreciated in value, but within the last five or six years it has greatly appreciated, and the property now in controversy has become quite valuable. .

The court below dismissed the bill, at the costs of complainants, from which decree they appeal.

*G. S. C. Dow* and *W. E. Leffingwell*, for the appellants.

*Whitaker & Grant*, and *Cook & Dillon*, for the appellee.

WRIGHT, C. J.—To defeat the plaintiff's action, and sustain the decree below, the appellee relies upon two grounds: *First*, the statute of limitations, which he sets up by plea, supported by an answer; and *Second*, that by the judgment, execution and sale, the right of the complainants to call for a specific performance was extinguished.

VOL. III.                    15

This case was before this court at the December term, 1854. At that time, defendant had set up his defence of the statute of limitations, to which there was a demurrer. This demurrer having been overruled by the court below, complainants appealed, and this court held the demurrer well taken. The cause being remanded, the same defence was again set up—demurred to—and demurrer overruled. When the former decision was made in this court, an application for a rehearing was made, which is still pending. The parties having prepared their case, and had a hearing on the merits since that time, it now comes before us for final adjudication, the defendant treating his argument herein as if made also on his application for a rehearing.

The decision before, only covered the question raised by the statute of limitations, and defendant now insists that it mistakes the law, as also the facts. It is true, that one ground upon which the demurrer was sustained was, that as the statute of limitations of 1843, did not commence running until after the death of Gano, the heirs, if minors, and out of the state, were saved by sections 7 and 8 of that statute. This was evidently based on a mistake in fact, for the bill and all the testimony shows, that he died more than a year after the taking effect of the statute. In addition to this, however, defendant insists that the former opinion misapprehends the time when the statute began to run against Gano or his heirs, that time being, as is now urged by appellee, from the date that he had a *right* to demand a deed, and not from the time of *making* such demand.

If we should grant defendant's position in this respect, however, he would not be aided, unless we should concur with him in still another and more important question involved in this part of the case. In delivering the former opinion, HALL, J., says, " that the 4th section of the act of 1843, does not apply to this class of cases—that the capital circumstances of the contract was the land. Gano contracted for the land, and Leclaire agreed to convey land, not to pay money," and he, therefore, concludes that *six years* is not the limitation applicable in such cases ; but that it must be gov-

Wright et al. v. Leclaire.

erned by the 7th section, which limits the right of action to twenty years after the right or title accrued.   If this is the law, then it is manifest that all other questions, such as the minority of the complainants, when the statute commenced running, and matters of that character, become unimportant, for there is no pretence that the twenty years had expired when this action was commenced.   And our opinion is, that this is the law.   We hold it to be the law, in the first place, because it has been so declared by this court, after what is conceded to have been a full argument, covering in its range many of the adjudicated cases ; and in the second place, because it fully accords with our own convictions, and as we believe, the strong current of the decisions of other courts.

We recognize the rule, that courts of equity are within the spirit, if not the words, of the statute of limitations.   In many, and perhaps most cases, they act upon the *analogy* of the limitations at law ; while in others, they act not so much in analogy, as in *obedience* to such statutes.   But if we concede that in such cases as the one before us, equity will act in *obedience* to the statute (of which we shall speak hereafter), it would not advance the argument; for to give this view pertinency, it must be taken for granted, that this case comes within the terms of the 4th section of the act of 15th February, 1843.   Acts of 1843, 384.   If that is granted, then the argument is, that inasmuch as six years is the time therein fixed for commencing an action at law, you cannot by changing the forum, extend or change the time.   But it is denied that it does come within the terms of that section, and here is where the controversy hinges.   It will not, therefore, do to admit or take that for granted which is denied, and upon that assumption base the argument.

The material portions of sections 4 and 7, are as follows : The first provides, " that every action of debt or covenant for rent, or arrearages of rent, founded upon any lease, under lease, or every action of debt or account, founded upon any single or penal bill, promissory note, or writing obligatory, for the direct payment of money, on the delivery of property, or the performance of covenants, and every action of

assumpsit, shall be commenced within *six* years after the cause of such action shall have accrued, and not after," &c.

The second provides, "that every real, possessory, ancestral or mixed action, or writ of right, or action of ejectment, brought for the recovery of any lands, tenements or hereditaments, shall be brought within *twenty* years next after the right or title thereto, or cause of such action accrued, and not after," &c. In construing these two sections, we first remark that there is perhaps no statute of limitations in any of the states but has provisions similar to these. By this, we mean, that all of them fix a different time within which to commence actions, which are personal, or for the recovery of money, and those which relate to lands. As a general thing, the time is longer in the latter, than in the former class of actions. And another thing is equally true in all the states, that in bonds for the conveyance of lands, or the performance of covenants, the party may either proceed in equity for a specific performance, or sue at law for his damages resulting from a breach of such covenants. And, notwithstanding this, we know of but few, if any cases, in which it has been held that a party was barred of his right to claim a specific performance, because the six or eight years (as the statute fixed it), had elapsed within which to bring the action of debt or covenant.

Some of the cases referred to by defendant's counsel, we have been able to examine; to others we have not had access. One case, is that of *Watkins* v. *Harwood et al.*, 2 Gill & Johns. 307. In that case, the administrators of Harwood, against the claim of plaintiff (Watkins), preferred against the estate, set up a mortgage given by the plaintiff to the decedent, and claimed that they had a right to retain the amount thereof, out of the distributive share which said plaintiff was, in her suit, claiming of the estate. By the law of that state, a debt due by specialty, was barred after a lapse of twelve years. The debt due by the mortgage, became due and payable more than sixteen years before the death of Harwood, the mortgagor. The question arose, whether the plea of the statute of limitations ought to be allowed? In the argument,

counsel in support of the plea, refer expressly to the fact that the mortgagee (or his administrator) was not attempting to enforce his lien, but were using the mortgage as a set-off, or a mere evidence of debt. And in the opinion, the court lays stress on the fact, that "it is not a proceeding to foreclose, or in any shape against the thing itself." And inasmuch as it was a mere claim of a debt, it was held that the plea was good, whether the question arose at law or equity. But we feel justified in saying, that if the proceedings had been to foreclose the mortgage, or "against the thing," or property mortgaged, the plea would have been held bad. This is evident, both from the argument and opinion. This case, then, does not aid defendant.

*The People* v. *Everest*, 4 Hill, 71, is a brief case, and arose upon the default of the defendant as sheriff, to return an execution. It is very imperfectly reported, and without any necessity, as far as we can see, proceeds to state, that while the general statute of limitations has no application, *eo nomine*, to a bill in equity, even where that is concurrent with the remedy at law, yet courts of chancery always allow it to be pleaded in such cases; for the reason that the party should not be allowed to evade its effect, by resorting to another forum. Giving to the dictum, however, its fullest force, it weighs but little in this case, because the whole controversy here is, whether the equitable is concurrent with the legal remedy, which is by no means conceded, and which is not true in fact.

The next case is that of *Lawrence et al.* v. *The Trustees of, &c.*, 2 Denio, 577. This case is fully reported, and instead of sustaining defendant's position, establishes the contrary doctrine. Without stating the facts, we shall give such extracts as more immediately bear upon this question: "If the matter in controversy in a court of chancery, is of a purely equitable nature, not cognizable in a court of law, the statute of limitation has no application, but the court will apply the doctrine of neglect and lapse of time, according to discretion, regulated by precedents and the peculiar circumstances; but where the two courts have concurrent jurisdiction, and also

where the aid of equity is invoked on account of special circumstances, such as the need of discovery, the difficulty of proceeding at law, or the like, the statute is as effectual a bar as at law," referring to *Hambert* v. *Rector of Trinity Church*, 7 Paige, 195 ; *Roosevelt* v. *Mark*, 6 Johns. Ch. 289 ; *Burdine* v. *Sheldon*, 10 Yeager, 41, and other authorities. And again, "if the present claim is one in which a court of law has concurrent jurisdiction with courts of equity, this suit was barred by the statute of limitations ;" but, proceeds the vice-chancellor, "the remedy was limited to a suit in equity," where alone the assets of the deceased in such cases could be pursued, and, therefore, upon principle, there was no ground for holding that there was such delay in filing the bill as to deprive the complainants of relief. The plea of the statute was overruled, and the decree was afterwards approved, on a hearing before the chancellor. The same general doctrine may be found in 2 Story's Eq. Jur. § 1520, and the note.

The case of *Smith et al.* v. *Carney et al.*, 1 Little, 295, is more in point, and seems to favor the doctrine contended for by defendant ; it was decided in 1822, and the concluding part of the opinion is as follows : " If then, the statute would have operated as a bar to an action at law, founded upon the contract, it would seem to follow, that it must operate equally as a bar to a suit in equity, founded upon the same contract ; for a court of equity is as much bound by the statute as a court of law. In fact, in all cases, the same rules of propriety, (property ?) and the same rules of decisions, govern both courts ; and it is, therefore, a settled rule that a court of equity will not decree the specific execution of a contract, upon which a court of law will not give damages."

We must be permitted to say, that the conclusion is not justified by the premises. Because the same rules of decision govern both courts, it by no means follows that it is a *settled rule*, that a specific execution of a contract will not be decreed, because the time to claim damages in a court of law has elapsed. To satisfy us that it is a *settled rule*, we should want more than the conclusion drawn from insufficient premises, unsupported by reference to any authority. "It would

*seem* to follow," says the opinion, but the question is, *does* it follow?    If it does, then we acknowledge that we misappre-hend the current of authorities in all the other states, as far as examined.   Some of these authorities, we propose to briefly examine, remarking before leaving the other authorities cited by plaintiff, that most of them merely recognize the general rule that courts of equity will act in analogy, if not in obe-dience to the statute, or relate to the doctrine of technical, continuing and express trusts.   Such are *Kane* v. *Bloodgood,* 7 Johns. Ch. 90 ; *Beckford* v. *Wade,* 17 Vesey, 95 ; *Banks* v. *Judah,* 8 Conn. 145 ; *Hovenden* v. *Annesly,* 2 Sch. & Lef. 630 ; 2 Story's Eq. Jur. § 1520.

Le tus, then, briefly refer to some of the authorities that not only *seem* to, but *do* settle the rule, different from what would appear to be laid down in 1 Littell, *supra.*   The statute of limitations does not apply in the case of a vendee bringing a bill for the specific performance of a contract.   The only question as to time, is a question of diligence.   *Washburn* v. *Washburn et al.,* 4 Iredell's Eq. Cases, 306.

If an injured party has a right to either of two actions, the one he chooses is not barred, because the other, if he had brought it, might have been.   *Lamb* v. *Clark,* 5 Pick. 198 ; *Bedell* v. *Janney et al.,* 4 Gilm. 193.

Where a debt is secured by the assignment of a mortgage, the security is not impaired by the statute of limitations bar-ring a recovery on the note.   *Cullum* v. *Bank of Mobile,* 23 Ark. 797 ; *Belknap* v. *Gleason,* 11 Conn. 160 ; *Miller* v. *Helm,* 2 S. & Marsh. 687.   The shortest period which a court of equity is bound to consider an absolute bar to a suit respect-ing real estate, in analogy to the limitations at law, is twenty years.   *Vanck* v. *Edwards,* 1 Hoff. Ch. 382 ; *Hawley* v. *Cram-er,* 4 Cow. 718.

*Walton* v. *Coulson,* 1 M'Lean, 120, is a well considered case, and after examining several cases decided in Tennessee, the court say : "From these decisions, it does not appear that the Supreme Court of Tennessee, have decided that the statute operates as a bar to the specific execution of a con-tract, by an heir, on whom the real estate has been cast by

the decease of his ancestor. Such a decision would be so novel in its character, and injurious in its consequences, that we should require a clear adjudication, fixing such a construction of the statute, before we could consider it as the law of this state." And again, we know that courts of equity have frequently granted relief in this class of cases, where the bill has been filed long after the statutory bar to an action at law to recover damages, would avail. In many instances, perhaps, the defence was not urged. This is true, and the fact that it was not, if not an affirmative, is at least a strong negative argument, that it was not a bar. Indeed, we can find but few of the many cases on the subject of specific performance, where this defence was urged. Even where the time had passed at the time of the commencement of the suit for the recovery of damages, relief has been granted in such cases, twelve, fifteen, twenty, and even a greater number of years, after the conveyance should have been made. Generally, the statutory bar for commencing actions at law relating to realty, will be the guide; but the relief may be denied, where a less number of years even may have elapsed, and it may be granted where the time is greater. Each case must stand on its own circumstances. If, however, there are no peculiar circumstances, the legal bar governing real actions will apply. *Baker* v. *Morris*, 10 Leigh, 284; *Getchell* v. *Jewett*, 4 Greenl. 350; *Kinna* v. *Smith*, 2 Green. Ch. 14; *Hawley* v. *Cramer*, 4 Cowen, 743; 2 Story's Eq. Jurisp. § 747; *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Baker* v. *Whitney*, 3 Sumner, 475; *Miller* v. *McIntire*, 1 McLean, 85; and same case in 6 Peters, 62. This doctrine is expressly recognized in Angell on Limitations, § 26, and 2 Story's Eq. Jur. § 1520, where it is said, that if a legal title would in ejectment be barred by twenty years adverse possession, courts of equity will act upon the like limit, and apply it to all cases of relief sought upon equitable titles, or claims touching real estate." See also Willard's Equity, 293.

Leaving cases, let us briefly look at the question upon principle. The counsel for defendant insist, that complain-

ants are barred of their action, because they have a concur-
rent legal remedy, and that they cannot by a change of forum,
extend their right to commence the action.   Such, too, is the
general language of the books, and we may deduce from the
authorities, these two propositions: First, in cases of concur-
rent jurisdiction, courts of equity equally with courts of law,
are bound by the statute, and they may, therefore, in such
cases, be said to act in obedience to such statute.   Second,
in cases not of concurrent jurisdiction, the statute is applied
in many, and indeed most instances, to equitable titles, by
way of analogy to the law.   *Platt et al.* v. *Northane,* 5 Mason,
112; *Raymond* v. *Simpson,* 4 Blackf. 77; *Kane* v. *Bloodgood,*
7 Johns. Ch. 90; *Murray* v. *Coster,* 20 Johnson, 576; 2
Story's Eq. Jur. § 1520.   And hence it is, that in the
first class of cases, a change of forum, will not extend the
time for commencing the action.   Therefore, while under
the old practice, at least, cases of account, of fraud, of parti-
tion, of dower, and the like, might be brought in either juris-
diction, yet the statute of limitation applied in one court as
in the other.   *Smith* v. *McIver,* 9 Wheaton, 532.   But let
us ask, if court of law has concurrent jurisdiction in this
case? What relief here sought, could such a court give? There
is no change of forum, because there is but one appropriate
or proper one.   Ever since courts have acted in such cases,
the jurisdiction has been exercised by the chancellor.   Courts
of law have no power to adjudge or to order the specific exe-
cution of such contracts.   It is true, as already stated, that
complainants might have sued for the penalty at law, to re-
cover their damages; but the subject, object and purpose of
the contract, was the land.   As is said in the former opinion,
that is the " capital circumstance."   This bond is in the
nature of a conveyance.   It gives the vendee a certain equi-
table interest therein.   Defendant was the trustee of Gano as
to this land, upon the payment of the purchase money, and
Gano, as to such purchase money, was a trustee for defend-
ant; and to secure this money, defendant had a lien on the
land.   2 Story's Eq. Jur. 789, 790.   To enforce this, the prin-
cipal object and purpose of the contract, the vendee could

only resort to a court of chancery. The jurisdiction is not concurrent, and, therefore, to talk about the bar under the fourth section of the act applying, because the jurisdictions are concurrent, is a misapplication of the term. This rule applies only, where you seek in equity, because of peculiar circumstances, to obtain or recover that which might be recovered at law. A familiar illustration of this rule, is to be found in that class of cases where you go into equity for discovery, and thus give the court jurisdiction of a matter which it would not otherwise have. There the jurisdictions are treated as concurrent, and by thus giving equity jurisdiction, you cannot avoid the statute, if it would apply at law. But once more, and finally on this part of the case, why does not this case come strictly and clearly under the seventh section of the statute, and, therefore, not barred under twenty years, if necessarily then; or if in less than that time, only so, because of the negligence of complainants, showing an abandonment of their claim, or because of some other equitable circumstances entitled to weight? It is an action to recover the land, just as much as an action of ejectment is, where a party relies upon his legal title. If the defendant was paid for this land, it may well be doubted, whether even twenty years would bar the action, upon the principle well recognized in the books, that the statute does not apply in such cases of trust. But waiving that, it is conceived, that if the complainants are otherwise entitled to relief, they should not be barred their action in six years, any more than if they had a deed, and brought ejectment, or had a mortgage and sought to foreclose; because in such cases, they might and should have brought covenant on the deed, or assumpsit, or debt, on the note secured, within a less number of years than that fixed for the ejectment or foreclosure proceedings. This action is brought to recover the land—to test the title in effect. It is in effect, a real action. Complainants have the equitable, and seek to have defendant convey to them the legal title, which they say is theirs, and which he holds as a mere trustee for them. To hold that their right of action is barred after the lapse of six years, to our minds, would be doing

violence to the spirit, as well as the letter of the statute, as well as what we understand to be, the almost uniform current of decisions in all the states.

If it appeared that there had been great *laches* on the part of complainants; that valuable improvements had been made upon the land; that defendant, relying upon his right, had parted with the title, or from any circumstances it would be inequitable to enforce the contract, the argument of *lapse of time*, which is always considered in such cases, would have weight. No such considerations arise here, however. The minority of the complainants, their non-residence, their ignorance of their rights, the prosecution of their claim so soon as known, excuse and explain the delay. And while these might not, under the circumstances of the case, prevent the running of the statute of limitations, or avoid the bar, if the whole time had elapsed, they are always to be considered to excuse apparent laches, and avoid the argument resulting from lapse of time. We conclude, then, that the first position of defendant, is not well taken, and with the remark, that the novelty of the question in this state, and its full argument on the petition for a rehearing, as well as on the case at bar, must be the excuse for what might otherwise appear an extended and prolix discussion of the question, we pass to the second ground of defence. •

Did the sale under the judgment obtained by Leclaire, extinguish the right of the complainants to these lots? This question we also feel constrained to answer in the negative. If defendant had bought this property on the execution in satisfaction of his whole debt, or if he had thus only received a portion of his claim, and had not otherwise, either by payment in money, or the sale of other property, received any part of the purchase money, we should perhaps hold the title of complainants extinguished by such sale. But it is an entirely different question, when he has received in money and other property, almost five-sixths of the purchase money. Treating the last sale as the valid and binding one for the present, it appears that with the seventy-five dollars paid at the time of the contract, he has received thereon,

aside from the out-lots in controversy, $468 ; the whole debt being five hundred and ninety-eight.  He has then been paid all but one hundred and thirty dollars of the purchase money, and insists that he is entitled to that, and also the lots.  If this is correct—if this is equity—then indeed have we failed to understand the fundamental principles upon which equity is administered.  But if it is his right in equity, then we have nothing to do but to so determine, however hard it may seem ; for hard cases should not make *bad equity*, any more than *bad law*.  Let us see whether it is his right, or whether equity can do, without violence to any rules, that which justice would seem to dictate.

While there are certain leading rules, that must obtain in the decision of all cases, and which cannot be disregarded, yet it is equally true that, in a court of equity at least, each case must be determined to a certain extent, upon its own peculiar circumstances and equities.  And, therefore, it will not do, as in the argument at bar, to lose sight of the relations of these parties, and their respective duties and obligations.  Say counsel, for instance, " suppose some other creditor of Gano's had sold and purchased his interest in these lots by judicial sale, would this not have extinguished his right to the same, if he failed to redeem ?"  Grant it, and does it therefore follow that the same is true, if defendant purchased ?  In the case supposed, there is no contract outstanding, or obligation on the purchaser to convey these lots.  In the case at bar, there is such an obligation ; and if, by purchasing in Gano's interest, he thereby extinguishes all right in him to the lots, then the same would be true, whether he purchased before or after the time he was bound to convey, though there might have been a strict performance on the part of Gano.  Would counsel contend that because a stranger to this contract, might thus extinguish or defeat Gano's right to the property, therefore Leclaire could, in the same manner, relieve himself from his obligation to convey the land, by purchasing *before* the maturity of the bond.  We think we may safely say, not.  What difference does it make, then, whether he purchases before or after the

time he was to convey ? If the complainants' rights are otherwise perfect, how can the purchase by him, affect them ? Suppose he had received the whole purchase money, and had never conveyed, with his obligation to convey outstanding, could he satisfy his bond, and defeat their right to a deed, by purchasing their equity at a judicial sale? This undertaking is to make to the vendee or his heirs, a good and sufficient warranty deed, upon the compliance on their part with certain conditions, and though he might buy in ever so many equitable or legal titles, his obligation is the same; and these rights are co-extensive with his obligation. Let us suppose, that the whole purchase money had been paid at the time of the contract, and that the conveyance was to be made on the happening of some other event. Could defendant on the happening of the contingency, be excused from conveying, upon the ground that he had at a judicial sale, bought in their right to a deed, or their equity in the lots? He might require that the amount paid by him should be discharged, and insist upon it as a lien, or the lots to be paid for before he parted with the title; but he could not, upon any equitable ground, hold on to the purchase money, and the lots also. Much less can he do so, where he purchases the lots in part payment of the consideration money.

The case of *Grabb* v. *Crane*, 4 Scam. 153, cited by defendant, so far from favoring his view, at least negatively, holds that he cannot by such sale *alone* defeat their rights. There a part of the purchase money was paid, and judgment recovered for the balance. An execution being issued thereon, and returned no property found, the vendor filed his bill setting out these facts, and concluded with a prayer for the sale of the lands in satisfaction of said judgment. Defendant was served, the bill taken *pro confesso*, and a decree in accordance with the prayer. The defendant then filed his bill of review, which was demurred to, and demurrer sustained. The writ of error was prosecuted to the decision, sustaining said demurrer. Defendant (or complainant in the bill of review) claimed that the vendor was bound to execute a deed to the vendee, and then, and not until then, levy his

execution on the land.   The court say, " doubtless he might have done so, but he was not necessarily required to resort to that particular remedy.   In this, as in many other cases, the law gives a choice of remedies, and he had a right to elect whether he would convey the land, and levy his execution upon it, or file his bill in chancery, and subject it to the payment of his judgment."   But nowhere is it intimated, that by a sale, without a previous conveyance, or an order of court, or bill filed, the vendor could divest the vendee of his right to a deed.

Again; it is said, that the purchaser of a tract of land, under an execution sale, acquires all the right and title, whatever it is, which the defendant has in the premises, to the same extent as he would by a voluntary purchase from the party ; referring to *Turrey et al.* v. *Saunders et al.*, 4 Scam. 532 ; *Andrews* v. *Murphy*, 11 Geo. 431 ; *Boyd's Lessee* v. *Longworth*, 11 Ohio, 252 ; *Scribner* v. *Lockwood*, 9 Ohio, 186, and other cases.   This is true, and particularly so, when applied to third persons, or the extent of that interest ; that is to say, if the defendant had a fee simple, leasehold, or other interest or title, that the purchaser at such a sale acquires neither more nor less.   But how far is this rule pertinent to this case ?   The purchaser acquired the right to fulfill the contract and demand the deed.   He virtually assumes to pay the money, and then asks to be subrogated to the rights of the vendee.   Leclaire, or the vendor, by the law, could do no more, nor yet so much, for as already shown, he could not thus satisfy his bond or undertaking to convey.   By purchasing at the sale, he becomes in fact, the vendee as well as the vendor, and while, technically, he may be said to stand in the place of the complainants, or the original vendee, his obligations assumed by his original contract, are thereby none the less binding, nor can he escape from them, if there is otherwise a sufficient compliance on the part of the obligees.   He had his election to declare the contract at an end, or to hold Gano to a performance.   If he elects to pursue the latter course, as he has, by suing on the notes and collecting the money, he should be held to do as he agreed,

Wright et al. v. Leclaire.

and that is, to convey the lots. The right of Gano and his heirs to redeem, was not only a statutory redemption from a sheriff's sale, but also a right resulting from the relation created by virtue of the contract; an equitable right, based upon equitable principles. The lots remain in his hands; he by his contract, held them in trust for the vendee; and thus being in his hands, a court of equity will lay hold of the subject of the trust, for the benefit of the *cestui que trust*. *Rigley v. Casey*, 4 Har. & McH. 198.

We are referred by defendant's counsel, to the case of *Broome* v. *The Missouri Iron Company*, 17 How. 340. This case is in every essential particular different from that. That suit was brought in 1848, to enforce the specific execution of a contract entered into in 1839. The vendee never paid or offered to pay, the consideration money, nor did he in any manner comply, or pretend to comply, with his contract. In addition to this, the property claimed, had been sold several years before the bill was filed, on a judgment obtained against the vendors; and the next year, the vendors executed to the purchaser at such sheriff's sale, a deed for the same property. And afterwards, in 1843, a decree was entered against the vendee, for the purchase money, which the court held was an equitable lien upon the land. The land was decreed to be sold for the payment of the consideration money. It was accordingly sold, and "this proceeding was had," says the court, "*on the ground that the vendee had abandoned his claim to the land.*" Under these circumstances, Justice M'LEAN, in delivering the opinion of the court, might well say, that, "it would be difficult to find any case, where the objections to the specific execution of a contract, are more insuperable than in this case." There, no part of the condition money had been paid; here only a small amount remains unpaid. There, the interest of the vendors in the land, had been sold under execution, as well as by their own voluntary deed, whether with or without notice to the purchaser of complainants' outstanding bond, is not shown. Here, Leclaire still holds the property in his own name. And finally, the interest of the complainant had been sold under

a decree for the purchase money, which was found to be an equitable lien on the land, which latter proceeding was had on the ground, that the vendee *had abandoned his claim to the land.*

This brief reference to the two cases, is sufficient to show that they are in all respects dissimilar, and that nothing is decided in that, which conflicts with the ruling here made. We conclude, therefore, that complainants are entitled to a decree for this land, upon paying the amount due defendant, over and above the amount paid at the time of the contract, and that for which his other property sold. And as to this, complainants claim that their ancestor paid another seventy-five dollars in the spring of 1841. To this, there are two conclusive answers: First, there is no testimony to satisfy us of the payment; and in the second place, the judgment of June, 1843, must be taken as conclusive on that subject. The record of that case, which is made a part of this, shows that defendant (Gano) appeared by attorney; and under such circumstances, it was his duty, if he did not, to plead such payment. Having failed to do so, he cannot, without a stronger showing than is here made, go back of the judgment, and show that it was rendered for too much. *Hamott* v. *Hampton,* 7 T. R. 269; *Loring* v. *Mansfield,* 17 Mass. 394; *Loomis* v. *Pulver,* 9 John. 244; *Carter* v. *Canterbury,* 3 Conn. 461.

The complainants also claim, that defendant should be concluded by the amount of the first sale; that he had no right to have that set aside, on his own motion; and that being concluded by that, he is bound to account for $373.33 for the quarter section of land, and $124, the amount for which lot 4, block 63, sold at the second sale, making the aggregate sum of $497.33; whereas, if the second sale is to be the guide, the same property only sold for $394, making a difference of $103.33. And it will be observed, that this difference arises from the price paid at the first, compared with the second sale, for the quarter section of land.

This motion was made by Leclaire, of which Gano had no notice, nor is there anything to show that he made any ap-

pearance at that time. It was made almost a year after the judgment was rendered, and near seven months after the first sale. It is true, that the record says, " that the case came on to be heard upon a motion to set aside the proceedings of the sheriff upon the execution, &c., *and was argued by counsel*," but this allegation is as true and fully sustained, if the motion was argued by counsel for Leclaire alone, as if argued by counsel for Gano also. So that we conclude that there is nothing to show, that Gano either had notice or appeared voluntarily on the hearing of said motion. Under such circumstances, is he or his heirs bound thereby? and if not, what effect, if any, does the setting aside of that sale have upon their rights? After service or voluntary appearance, a party to a suit is in court, and must take notice of what is done therein, up to the time of final judgment; and by all such proceedings he is bound. But after judgment, he is not further bound to take notice. After such judgment, the case, and the necessity for his presence, is presumed to be at an end, and if the opposite party would take any further step, he must give his adversary an opportunity to be present and be heard. To set aside a sale on motion, without notice, or showing that the opposite party voluntarily appeared, therefore, in no manner binds him, and the party making the same can derive no advantage therefrom. Upon this subject, see *Delpalaine* v. *Hitchcock*, 6 Hill, 14; *Douw* v. *Burt*, 1 Wend. 89; *Eline* v. *Green*, 1 Blackford, 53; *Clamorgan* v. *O'Fallon et al.*, 10 Missouri, 112; *Tbler et al.* v. *Ayres*, 1 Texas, 398; *State Bank* v. *Marsh*, 2 Eng. 390; *Bently* v. *Cummins*, 3 Ib. 490; *Clark* v. *Grayson*, 2 Ark. 149; *Sears* v. *Lord*, 2 Gilm. 281.

We conclude, then, that the first sale was improperly set aside. How far this may affect the title to the property so purchased, whether viewed in reference to the first or second sale, is not now to be determined. We only determine that as this sale, under the circumstances, was improperly set aside, the complainants are not bound by such order, and have a right to insist, as they do, that defendant shall be liable to them for the amount of the bid then made, and that

he cannot account to them in this proceeding, for the quarter section, at the price bid at the second sale. We then conclude, that from the amount of said judgment, should be deducted the following sums:

Amount first bid on the quarter section,    .    $373.33
Amount bid at the second sale for lot 4, block 63,    124.00

$497.33

And inasmuch as the second sale of the quarter section, was for the reasons above stated, irregular, at least complainants should not be held for the sheriff's commission thereon, to wit: two per cent. on the $270. For all other costs, as far as we can judge from a careful examination of the record, they are properly chargeable. The petition for a rehearing is therefore overruled, and cause reversed and remanded, with instructions to the court below, to render a decree in favor of complainants, requiring defendant to convey to them the out-lots in controversy, upon their paying to him, or the clerk of the court, the amount still due, calculated upon the above basis.