## JOHNSON v. HOPKINS *et al.*

1. **Statute of limitations: REAL AND PERSONAL ACTIONS.** Under the existing statute of limitations all actions for the recovery of real property, and all personal actions on written contract commenced since July 1st, 1856, 'must be commenced within ten years after the cause of action accrued.

2. —— **EQUITABLE CASES.** Whether the statute of limitations (Rev. 1860, chap. 116), was intended to apply to courts of equity as to courts of law, *query?*

*Appeal from Des Moines District Court.*

MONDAY, JUNE 19.

STATUTE OF LIMITATIONS IN EQUITY, ETC.: SPECIFIC PERFORMANCE. — The petition was filed August 17, 1859, and alleges that Enoch Wade, deceased, in consideration of $200, executed and delivered to the plaintiff the following contract:

VOL. XIX.—7

"BURLINGTON, May 22, 1838.

Know all men by these presents, that I, Enoch Wade, agree with James Johnson to make him a deed to a certain parcel of land, situated on a certain piece of ground by the said Wade claimed, as the first settler or occupant, being south and adjoining the city of Burlington, being 60 feet by 120. I, the said Wade, agree that, if I can get a pre-emption on the above described parcel of ground, and get a title from the government to make the said Johnson a deed to the above named sixty feet, in the penal sum of $200, and if said Wade fail to get said right, then this to be void and of no effect. Given May 22, 1838.

ENOCH WADE."

This lot is now known as lot six in Wade's subdivision of section four. The petition, after setting out the above contract, alleges in substance that Wade died without having conveyed said lot to the plaintiff, and left a will appointing his wife, Catharine, and Samuel Leebrick executors, with power to sell section four as above; that these executors recognized the plaintiff's claim, and never sold said lot six. The executors and heirs of Enoch Wade are made defendants, and specific execution of the contract prayed. This is the substance of the petition. Nothing is alleged to show the cause of the delay in bringing suit. The answers of the heirs allege that they have no knowledge of the alleged agreement, and require proof, and they severally plead the statute of limitations. The answer of the widow, one of the executors, is to the same effect. The answer of Leebrick, the other executor, admits that Wade obtained title from the United States; that the lot in question was by "the said executors set off and reserved from sale, this defendant having understood (from McKell) that Wade, in his lifetime, had sold the same, but to whom

defendant did not know, and the lot was reserved to fulfill said contract, if one had been made."

The evidence shows that neither the widow, the heirs or Leebrick ever knew from Wade that this contract was outstanding. That one James McKell told the executors, after Wade's death, that there was a bond out for this lot to a man named Johnson; the records were consulted, but no bond was found, and the lot, under the advice of the probate judge, was reserved from sale to fill any such contract.

The same James McKell (who is the plaintiff's agent in the bringing and prosecution of this suit) testifies to the genuineness of the signature of Wade to the contract; that, in 1842, Wade spoke about such a contract, and again in 1843, and refused to sell the lot in question, because he had sold it to Johnson for 200 Mexican dollars. " In 1838, I think, Wade, in a boasting or bragging manner, stated that he had sold the piece of land to Johnson, whom I then knew, for the sum of $200."

" The lot was once partially inclosed by a person owning the premises adjoining; with this exception, it has been unimproved and uninclosed until about two or three years since, when I (McKell), as agent of Johnson, consented to the erection of a shanty by an Irishman." (McKell's deposition). McKell, in relation to his authority to act, &c., testifies that the plaintiff " sent the bond by his brother to me, who took my receipt for the same, and told me to proceed and get a title, and he would satisfy me for my trouble; this was about three years ago; I gave the papers to an attorney to bring suit, and I have paid out what expense has been made, under promise of being remunerated by Mr. Johnson; I know of no arrangement as to division of property, if successful."

In answer to the question, whether the plaintiff is living or dead, his residence, &c., McKell answers: "His resi-

dence was, about two years since, in the State of Missouri; I forget the county; I have not since heard of his death; he has no other agent except myself, that I know of." It was proved that Leebrick, one of the executors, had paid all the taxes, down to and including 1858. It does not appear that the plaintiff ever paid any of the taxes prior to the bringing of this suit.

This is the substance of the evidence. The District Court entered a decree for the plaintiff, as prayed, requiring him, however, to refund to Leebrick the taxes which the latter had paid on the lot.

Defendants appeal.

*J. C. & B. J. Hall* for the appellants.

*D. Rorer* for the appellee.

DILLON, J. — The controlling question in this case arises

1. STATUTE OF LIMITATIONS: real and personal actions.

upon the statute of limitations pleaded and insisted upon by the defendants. The contract sought to be enforced is dated May 22, 1838. Wade, the ancestor of the defendants, died in the fall of 1843. When he procured title from the United States is not shown by the evidence, but it was at some time prior to his death. The plaintiff had a right of action, therefore, upon the contract in suit as early as 1843.

Our statute also provides (R. S., § 2740; Code, § 1659) that actions "founded on *written contracts*, or where brought for the recovery of *real property*," must be commenced "within ten years" after the cause of action accrues and not afterwards.

Whether the present be treated as an action on the *written contract*, or as an action for the recovery of *real property*, makes no difference, for the limitation period is alike. Under prior decisions in a kindred case, and under a kindred statute, the present might be regarded as in the

nature of a *real* as distinguished from a *personal* action. (*Wright* v. *Le Claire*, 4 G. Greene, 420; *S. C.* elaborately considered, 3 Iowa, 221.) But the point is not important, for now the limitation period is the same.

It is definitely settled by previous adjudications, that under the present statute of limitations, all actions for the recovery of real property commenced since July 1st, 1856, must be commenced within ten years after the cause of action accrued. (*Montgomery* v. *Chadwick*, 7 Iowa, 114, S. P.; *Wright* v. *Keithler*, Id., 92; *Kilbourne* v. *Lockman*, 8 Id., 380, overruling *Phares* v. *Walters*, 6 Id., 108.)

And the same rule applies to personal actions on written contracts. (*Bennett* v. *Bevard*, 6 Id., 82.)

The present action was brought at least sixteen years after the cause accrued, and more than three years after an
2. — equit-  action *at law*, whether real or personal, would
able cases.  have been barred. This presents, in our view of the case, a question whether our present statute of limitatations (Rev., chap. 116) was intended to apply (as to all cases therein provided for) to courts of equity as well as to courts of law. Referring to the English statutes of limitation, Lord REDESDALE, in *Hevenden* v. *Lord Annesley*, 2 Sch. & Lefr., 329, says: "Courts of equity are not within the words of the statutes, because *the words apply only to particular legal remedies;* but they are within the spirit and meaning of the statutes, and have always been so considered." (See, on this point generally, *Elmendorf* v. *Taylor*, 10 Wheat., 168; *Farnum* v. *Brooks*, 9 Pick., 242; *Wright* v. *Le Claire*, 3 Iowa, 221; Angell on Limit., chap. 3; *Bank* v. *Daniel*, 12 Pet., 56; *Borst* v. *Corey*, 15 N. Y., 505; *Newman* v. *De Lorimer*, *post*.)

Whether, and how far, matters of a purely and exclusively equitable nature not cognizable at law, are embraced in the words or purpose of our statute, we need not decide or even discuss, for admitting that cases of

direct or express trusts are not any more than formerly within the statute, and that courts of chancery in this State have still the power to interpose, to prevent the statute from being used against conscience, we are still of the opinion that the plaintiff has made out no such equitable case, as should induce us to refuse obedience to the statutes, or to refuse to apply its analogies to an antiquated and dormant demand.

The executory contract sought to be enforced, does not constitute a case of a *direct* or *express trust* of the character which, in equity, has been considered not to be barred by the statute. (Angell on Limit., chap. 16, and chap. 35, notes and cases; and leading American cases of *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, affirmed in Court of Errors, 8 Cow. 303.) If the present action is for the real estate, and is a real action, or an action in that nature, it is barred by the express language of the statute. So if it is an action upon the "written contract." If, abandoning these positions, the plaintiff claims that having paid the purchase-money, it is a case of trust, still it is a trust raised by implication of law, and within the statute, or at least subject to its application by way of analogy or imitation. (*Burham* v. *James*, 1 Spear South Car. Eq. Rep., 375; Angell on Limit., §§ 167, note, 178, 469, 473; *Murdock* v. *Hughes*, 7 Sme. and Mar., 219.)

We fail to perceive any strong equitable circumstances in this cause to displace the bar of the statute or prevent its application, or to prevent a court of equity from entertaining its salutary suspicion against stale demands. (*Plett* v. *Burchard*, 4 Edw. Ch., 30; *Kingsland* v. *Roberts*, 2 Paige, 123.)

The *laches* of the plaintiff stands wholly unexcused. He has all the time been *sui juris*. He has not been ignorant of the existence of his claim. He gives no reason for the delay. It is true that he has been a non-resident of the

State, but this alone is a circumstance of little weight. He does not complain of any fraud practiced upon him. He has made no improvements. He has never paid any taxes upon the land. He has not, in one respect, made such a case as that he could recover against Wade's estate, on an ordinary money demand; for it is a significant circumstance, that he neither verifies his petition, or is examined as a witness in the case, for any purpose. How can we say, in view of the death of the other party to the contract, but that the plaintiff was unwilling to vouch, *with his oath*, for the subsisting justice of the claim. The plaintiff is a competent witness, certainly as to all the facts transpiring since the death of Wade. He could have explained his delay if it admitted of explanation, and have shown why, after the lapse of twenty-one years after its date, the contract is resurrected from its long sleep and sought to be indued with vitality, and enforced against the widow and children of the other party thereto. The contract in suit may have been rescinded by parol and not surrendered to Wade; in truth, the facts and the conduct of the plaintiff wholly accord with the supposition that this may have been so. The circumstance that the executors, upon the information of McKell, and under the advice of counsel, did not, for prudential reasons, offer this lot for sale or sell the same, has no decisive weight, particularly as respects the heirs, who are the real parties in interest. It fares hard enough with dead men's estates, without enforcing against them, in a court of conscience, contracts on which, without explanation or objection, the dust of over twenty years has settled. Let a decree be here entered reversing the decree below and dismissing the petition.

Reversed.