Colvin v. McCune.

---

COLVIN v. McCUNE.

1. **Statute of limitations:** ADVERSE POSSESSION: COLOR OF TITLE. To constitute a bar under our statute of limitations, the adverse possession need not have been held. under color of title; it is sufficient if such possession be taken and held under a claim of right.

2. ——: ——: ——. A tax deed void upon its face will constitute color of title, under which adverse possession for the period prescribed in the statute of limitations will operate as a bar.

3. ——: ADVERSE POSSESSION: WHAT CONSTITUTES CONTINUED. Where timber and quarry land was claimed by the owner of adjacent property, who leased the quarries for ten years, and continued afterwards to procure stone and timber therefrom, or permitted others to do so upon payment for the right, and during the time regularly paid the taxes upon the land, the claimant of the property was held to have maintained continued adverse possession.

*Appeal from Johnson District Court.*

WEDNESDAY, OCTOBER 7.

THIS action was originally commenced September 28, 1870, as an ordinary proceeding for the recovery of real property— lots one and three, in section three, township eighty one, range five, in Johnson county. An answer to the petition was filed. Afterwards the plaintiff, by leave of court, filed an amended petition in equity, setting up her right to the same property, and averring that the defendant claimed some right thereto under an alleged tax title purchase, deed and foreclosure; and also averred the facts showing their invalidity, etc.; that defendant had used and sold large quantities of stone from said premises, etc., and asked an accounting. The answer is

in denial, and also sets up tax title in defendant, and pleads the statute of limitations. While the cause was pending below, the plaintiff died, and her heirs were substituted. There was a trial to the court; judgment for defendant. The plaintiffs appeal.

*Rush Clark* and *W. C. Gaston,* for appellant.

*S. H. Fairall* and *Boal & Jackson,* for appellee.

COLE, J.—There is no controversy but that the plaintiff's first husband entered the land sued for, and that by his death, and the subsequent death of their issue, she became the owner in fee of the government title. Nor is there any controversy as to the legal insufficiency of the tax sale, deed and foreclosure, to pass a perfect legal title to the defendant. The whole case is, therefore, rested upon the single question of the statute of limitations.

On January, 1843, Casper Nick, who was the plaintiff's first husband, entered the land in controversy, and on his way home from the land office was drowned. Shortly after his death, and on July 4th, 1843, a child was born to him by the plaintiff, who was named Casper W. Nick. In 1846 the plaintiff was married to John Evans, who died in 1853, and by whom she had two children, both of whom died before this suit was brought. In 1857 the plaintiff was again married to Harvey C. Colvin, with whom she lived until her death, which was after this suit was commenced, and by whom she had two children, who have been substituted as plaintiffs herein. The plaintiff lived in Linn county, Iowa, some eight or ten miles from the land, from the date of its entry up to the fall of 1859, when she removed with her family, including Casper W. Nick, to Texas, where Casper died in the fall of 1861. She removed from Texas to Schuyler county, Illinois, in the spring of 1869, and resided there till her death.

The defendant's title and claims grow out of the following facts: In 1839 James Cavanagh bought of one King, and took possession of, a "claim" to about five hundred acres of government land, which included that in controversy here, or at

least lot three. Cavanagh afterwards entered most of the land embraced in said claim, and which adjoined the land in controversy; his farm was made on the land entered by him; the Cedar river runs between and forms one of the boundary lines of each of the lots, one and three; upon the land in controversy are both stone quarries and timber. In 1843, and after the death of Casper Nick, some one representing his estate, widow or heir, leased the stone quarries to Duell & Holmes for a term of ten years; they took possession under the lease, and worked the quarries more or less during their term. In 1849 Cavanagh purchased the lots at a tax sale for the taxes of 1846, and obtained his treasurer's tax deed therefor; he also purchased them at a subsequent sale for taxes, and obtained another deed, and in 1852 or 1853 he obtained a decree of foreclosure under his tax title; about 1855 Cavanagh established a ferry and built a ferry house on the land in question; and the house was occupied and the ferry operated for two or three years or more; sometime afterwards the ferry went into disuse, and after that, the time not being distinctly shown, the house was torn down or removed. In 1858 Cavanagh sold his farm and the land in controversy to R. L. Lucas, and conveyed the same to him, the former by warranty and the latter by quit claim, and Lucas took possession at once. In 1860 Lucas sold all the property to Darius Baldwin, and conveyed to him in the same way, and Dennis Baldwin, a nephew and agent of the grantee, took possession from Lucas. In 1864 Darius Baldwin sold and conveyed all the property in the same manner to this defendant, John P. McCune, and he entered at once upon the possession.

The first point discussed is in respect to color of title. The counsel for appellant insist that the first tax deed is void on

1. STATUTE OF LIMITATIONS: adverse possession: color of title.

its face, and that it does not afford such color of title as will support the adverse possession requisite to constitute a bar, under our statute of limitations. But we have held that, to constitute a bar under our statute, by adverse possession, it is not necessary that the person holding the adverse possession should have taken and held under *color* of title; it is sufficient if such possession was

taken and held under a *claim* of right. *Hamilton et al. v. Wright*, 30 Iowa, 480, and cases there cited. And Cavanagh, whose testimony was taken in this case by the plaintiff, testifies that " after I bought lots one and two for taxes, and got my tax foreclosure, *I claimed that I owned them*, and I believe I paid the taxes on them until my sale to Lucas." The adverse possession, then, was taken and held after the premises were left by Duell & Holmes, in 1853, under a claim of title or ownership; and this, under the doctrine of the case above cited, was sufficient.

But if the tax deed was void on its face, it would afford color of title so that the statute would operate as a bar. This 2. ——: ——: was so held by this court in *Douglass v. Tullock* —— *et al.* 34 Iowa, 262, and cases there cited. That the defendant, and those under whom he claims, have taken and held possession under both claim of ownership and color of title, the testimony does not leave any room for doubt. See *Close v. Samm*, 27 Iowa, 509; Code of 1851, §§ 1239, 1240; Rev. of 1860, §§ 2268–9.

The next point discussed relates to the fact of continued adverse possession for the requisite time. Upon this point 3. ——: ——: the testimony is not so direct, clear and positive what consti- as upon the facts showing color of title. But, in tutes contin- our view, the weight of the evidence supports the ued. conclusion reached by the learned district judge who tried the cause below. It is not our duty here to discuss and compare all the evidence introduced in the cause, and to set it forth and weigh it in detail. We can only state, briefly, the leading facts whereon we can properly ground our conclusion.

In 1853, when Duell & Holmes abandoned the quarries, Cavanagh was in possession of, and cultivating his farm which adjoined the land in controversy, that is timber and stone land. He then assumed entire possession of this land, and claimed to own it. He cut wood and timber from it as he wanted it for use; he quarried stone for his own use, and others were allowed by him to quarry rock there, which they did, and paid him for; he established a ferry and built a house for his ferryman; he used the property as his own, and paid

the taxes upon it regularly. After Lucas purchased he took immediate possession of all the property, and continued its use, and paid the taxes, the same as was done by Cavanagh; and further, he sold the timber off twenty acres of the land, and it was cut and carried away during Lucas' occupancy. After the sale by Lucas to Darius Baldwin the possession was taken by Dennis Baldwin, who was the relative, agent and tenant of the purchaser. During his occupancy, timber was cut upon the premises, and stone was quarried for use, and others were permitted to quarry stone by paying therefor, and did do so; the evidence does not disclose as free a use and sale of timber and stone during Baldwin's tenancy and occupancy as during the ownership and occupancy of Cavanagh, Lucas, and the defendant; but the difference is only in degree, which is perhaps fully accounted for by the fact that Dennis Baldwin was but a tenant, while the others were owners. He took possession for his principal under a purchase as owner of the land in dispute, and he used it for the same purposes and in the same manner, if not to the same extent, as the former occupants had done. He also paid the taxes regularly, unless, as he says, he may have failed one or two years, respecting which he is not certain. But there is nothing to indicate that there were or are any delinquent taxes, or that they were paid by plaintiff or others. After this defendant took possession, which was immediately upon his purchase from Baldwin, it is conceded by appellant's counsel that he held by open and notorious adverse possession.

Upon the doctrine of *Booth & Graham v. Small & Small*, 25 Iowa, 177, we do not see any escape from the affirmance of this judgment, under the facts proved. It is there held that "possession of land is the holding of, and exclusive exercise of, dominion over it." It is evident that this is not and cannot be uniform in every case, and that there may be degrees in the exclusiveness even of the exercise of ownership. The owner cannot occupy literally the whole tract—he cannot have an actual *pedis possessio* of all, nor hold it in the grasp of his hands. His possession must be indicated by other acts. The usual one is that of inclosure. But this cannot always be

done, yet he may hold the possession in fact of uninclosed land by the exercise of such acts of ownership over it as are necessary to enjoy the ordinary use of which it is capable, and acquire the profits it yields in its present condition. Such acts, being continued and uninterrupted, will amount to actual possession; and, if under color of title or chain of right, will be adverse. *Langworthy v. Myers et al.*, 4 Iowa, 18; *Ewing v. Burnet*, 11 Pet., 41; *Brooks v. Bruyn*, 24 Ill., 372; *Wall v. Nelson*, 3 Littell, 398; *Williams v. Buchanan*, 1 Iredell's Law, 540; *Tredwell v. Reddick*, Id., 56; *West v. Lanier*, 9 Humph., 762; *Bynum v. Carter*, 4 Iredell's Law, 310; *Morrison v. Kelly*, 22 Ill., 624; *Ellicott v. Pearl*, 10 Pet., 413; *Dills v. Hubbard*, 21 Ill., 328.

As we view the evidence, the actual adverse possession, commenced after Duell & Holmes abandoned the possession, and in the year 1853, and continued down to the commencement of this action, in 1870. Under these facts, that the statute is a bar cannot be doubted in view of our former decisions, even after allowing the year for the minority of Caspar W. Nick. See *Phares v. Walters*, 6 Iowa, 106; *Montgomery v. Chadwick*, 7 Iowa, 114; *Kilbourne v. Lockman*, 8 Iowa, 380; *Johnson v. Hopkins*, 19 Iowa, 49; *Campbell v. Long et al.*, 20 Iowa, 382.

AFFIRMED.