## MONTGOMERY *v.* CHADWICK.

Where a party receives an absolute deed of real estate, and subsequently executes to the grantor, a bond for the conveyance of the premises, on the payment of a certain sum of money, and recites in the bond, that the money to be paid, was a loan, and the payment of the same was secured by the conveyance of the real estate, the deed is to be treated as a mortgage.

The right of action to redeem from a mortgage, does not accrue to the mortgagor, and consequently the statute of limitations would not begin to run against him, until the mortgagee took possession of, or began to hold, the premises, for the purpose of foreclosure.

The time when the mortgagee took possession of, or began to hold, the mortgaged premises, for the purpose of foreclosing the mortgage, must be determined from the acts of the mortgagee, and all the circumstances.

Where to a bill to redeem from a mortgage, the mortgagee sets up the lapse of time, as a bar to the right, in analogy to the statute of limitations, and the testimony fails to establish the time when he took possession of, or began to hold the premises, with a view to the foreclosure of the mortgage, the plea, or answer, of the mortgagee cannot be sustained.

Section 1671 of the Code, makes the statute of limitations retrospective, or applies it to existing causes of action.

In real actions, where the cause of action accrued prior to July 1, 1851—the time at which the Code took effect—the plaintiff is entitled, under section 1672, to five years from that period, in which to commence his action; but this right is qualified by section 1673, which provides that the whole time allowed him in such case, shall not be greater than that fixed by the law heretofore in force.

The period of ten years, allowed by the Code, in which to commence actions for the recovery of real property, commences at the time the cause of action accrues, and not at the time of the taking effect of the Code.

Where a cause of action for the recovery of real property, accrued prior to July 1, 1857, and where one-half of the period of limitation in such cases, provided by the Code, viz: five years, would extend the time for the commencement of the suit, beyond the period allowed by the former statute—viz: twenty years—the plaintiff is entitled to only so much of the "one-half," or five years, as will complete the former limitation of twenty years.

*Pharez* v. *Walters*, 6 Iowa, 106, overruled, so far as it refers to, and determines the period of limitation in real actions.

Where a mortgagee, in possession of the mortgaged premises, in consequence of the lapse of time, is unable to render an account of the rents and profits, he is to be charged with a fair occupying rent; and regarding it as rent, or use and occupation strictly, to be set off against the debt, it is to be limited to the property as it was, exclusive of the improvements.

Montgomery v. Chadwick.

Whilst the general rule, in cases of redemption from mortgages, is, that the mortgagee in possession, is not entitled to be paid or allowed for improvements, as he is for necessary repairs ; *yet, under some circumstances,* he may be allowed for valuable and lasting improvements, which increase the value of the estate.

Where in an action to redeem from a mortgage, it appeared that the mortgagee had been in possession of the premises for a period of nearly ten years ; that he made lasting and valuable improvements thereon ; and that the mortgagor must have known that the mortgagee was making the improvements, and where there was no evidence to show that the former interposed no objection to the erection of such improvements, the mortgagee was allowed the value of his improvements—he accounting for rent.

Where a mortgagee in possession, is allowed for improvements made upon the premises, and required to account for the rent, the rent is to be calculated on the improvements themselves, as well as on the lot, as they were before the improvements were put upon them.

*Appeal from the Dubuque District Court.*

WEDNESDAY, OCTOBER 27.

Bill to redeem from a mortgage, filed on the sixth day of June, 1857. The bill alleges that the complainant was seized in fee simple, of lots eighty-two and eighty-three in the city of Dubuque ; that in or about the year 1845, he made some conveyance and assignment of said premises to said respondent, by way of mortgage, for securing the repayment of a certain sum of money, with interest, then advanced to complainant by respondent—a copy of which conveyance is annexed to the bill, marked "Exhibit A ;" that at the time of said conveyance, it was understood between the complainant and respondent, and the latter then and there expressly covenanted and agreed with complainant, that upon the repayment of the money, and the interest thereon, the said respondent would reconvey the said premises to the said complainant—as will appear from a certain instrument in writing, a copy of which is attached to the bill, marked "Exhibit B ;" that the said respondent, upon, or soon after the making of said conveyance, entered into possession of the premises, and into the receipt of the rents, issues and profits thereof, and has ever

since continued in such possession, and receipt; that the complainant has frequently requested the respondent to come to an account for the rents and profits of the said premises, so received by him, and to pay over to complainant, what he should appear to have received beyond the amount of principal and interest due him, and also to deliver up the possession of the said premises, and reconvey and deed the same to the complainant; and that the respondent has refused, and still refuses to comply with said request. The bill then propounds certain interrogatories to the respondent, and prays for an account, and that he may be decreed entitled to redeem the premises.

Exhibit A, appended to the bill, is a quit-claim deed of the premises, dated July 21, 1845, executed by Richard Waller and wife, to the respondent, and duly acknowledged; and exhibit B, is a bond to the complainant, for the reconveyance of the premises, dated July 21, 1846, and executed by the respondent, the condition of which recites as follows:

· " The condition of the above obligation is such, that the said Ralph Montgomery has borrowed of the said Chadwick, two hundred and twenty-five dollars, and to secure him in the payment of the same, the said Montgomery has deeded to him, through Richard Waller, two town lots in the city of Dubuque, situated on Locust street, known as lots eighty-two and eighty-three. Now, be it remembered, that if the said Montgomery shall faithfully pay, or cause to be paid, unto the said Chadwick, the interest and full sum of two hundred and fifty-one dollars and sixty-six cents, on the first of December, 1846, then, in that case, the said Chadwick binds himself to reconvey and deed to the said Montgomery, the lots before mentioned; but if the said Montgomery shall fail to pay or cause to be paid unto the said Chadwick, the before mentioned amount, then this obligation to be null and void; otherwise to remain in full force and virtue."

. On the bond is the following indorsement:

"DUBUQUE, Oct. 13, 1846.

"I hereby agree to extend the time mentioned in the above bond, till the first day of April, 1847, on consideration that I receive on that date, from Montgomery, the sum of two hundred and seventy-one dollars and sixty-six cents, which is agreed to by both parties mentioned in this deed.          H. CHADWICK.          [SEAL.]

His
RALPH ⋈ MONTGOMERY.          [SEAL.]
mark.

Witness:     JOHN WHARTON."

The answer of the respondent denies that the complainant was seized in fee simple of the premises; denies that complainant ever made to him any conveyance or assignment of the premises; denies that respondent loaned complainant money, or that the money paid Waller for said lots, was considered as money loaned to the complainant; and denies that at the time of the conveyance from Waller, respondent agreed to convey said lots to complainant.

The answer admits that one year after the conveyance by Waller, the respondent agreed to convey the lots to complainant, as alleged in the bill; and that soon after said conveyance from Waller, he entered into possession of the premises. The answer then avers, that the premises were conveyed to respondent, by Richard Waller; that he was in possession of the same, for more than ten years prior to the commencement of this suit, and that said possession, during the entire time thereof, was uninterrupted, exclusive and adverse; that the complainant did not pay, nor offer to pay, the said sum of $271,66, or any part thereof, on the first day of April, 1847, or at any other time; that he allowed said bond to become forfeited, and wholly abandoned said lots; that he refused to pay for the same, and requested and agreed that said bond should be considered null and void; that after said bond was forfeited, and more than ten years before the commencement of this suit, the complainant entered into a contract with respondent, to

rent said premises; that respondent at the same time, repaired the house on said premises, and soon after made extensive improvements, that is to say, he built a large brick store and a dwelling house, of the value of $5000; that he rented the same from year to year, and afterwards sold a part of the same, and rented the remainder; that complainant has been living all the while in the vicinity, and has been frequently in Dubuque; that he has seen said improvements, and well knew that respondent was renting the same, but made no claim thereto; that respondent has paid all the taxes on said lots since he took a conveyance of the same; that the rents and profits of said lots, without the improvements put upon them by respondent, would not in his judgment, have amounted to enough to have paid said taxes; and that this suit was commenced on the 8th day of June, 1857, and more than ten years after the cause of action (if any there be,) accrued, and is barred by the statute of limitations, and by the law limiting the time within which suits in equity, for the recovery of real estate, must be brought. To this answer, a replication is filed.

Several witnesses deposed as follows.

*Mary Ann West.*—Knows lots 82 and 83 in Dubuque—was born on lot 81—afterwards removed to the opposite corner, and then moved back about the year 1847. Chadwick occupied the lots in question, in the spring of 1847. He made a garden and planted trees. In that spring he leased the house on said lots to Mr. Belle. Belle lived there early in the spring of 1847. Montgomery came over from Galena, and agreed to rent the house from Chadwick, at six dollars per month. He said he would come back in a week, but he did not return, nor take the house. In that same spring, Chadwick put a new roof on the house. I left Dubuque in 1848, and went to Chicago. Have been often in Dubuque, since I moved to Chicago. Chadwick built all the houses on the lots, except the log house. I do not know who built that. The buildings on the lots consist of one brick and three frame houses, and one log house. The brick was built in 1856. Two of the frame houses were

Montgomery v. Chadwick.

built in 1857, and one either in 1852 or 1853. Knows Montgomery. He has lived in Galena since the spring of 1847. Have not seen Montgomery in Dubuque, since the spring of 1847. He did not occupy the lots after the spring of that year. Chadwick has occupied them since that time. He rented one house to La Chade, a French family, after Belle left, and one to Dudley. Am 22 years of age.

*Cross-Examination.*—Was twelve years old in the spring of 1847. When I lived on lot 81, I lived with my mother. I was present at the time Belle rented the house from Chadwick. I was at my mother's house, on lot 81. My mother was present at the time. She is now dead. I was present, as also were my mother and brother, when Montgomery engaged the house from Chadwick, at six dollars per month. Mr. Chadwick lived with us in the spring of 1847. It was the log house that Montgomery engaged to rent.

*A. A. Cooper.*—Have lived in Dubuque twelve years next March. Am twenty-eight years of age. Know lots 82 and 83—occupied lot 84 since the year 1846. Chadwick occupied the lots since the spring of 1847. Know who built the brick house, and the frame one, that stands on the alley. These two houses are worth $2,500—they must have cost in the neighborhood of $5,000. Four other small tenements have been put on the lots since 1847—worth about $500. Know Montgomery. Do not know where he has lived since 1847. Seen him in Dubuque since that time, twice, perhaps more times. Saw him once passing my shop on lot 84, and spoke to him, and at another time at the court house.

*Cross-Examination.*—Montgomery had possession of the lots in 1846. He left them in the fall of 1846. Chadwick was living, in 1846, at the time Montgomery was in possession of the lots, on the opposite side of the street, on the corner of First and Locust streets.

*Richard Waller.*—Age 61 years. Residence, Dubuque. Am acquainted with both the parties. Recollect the conveyance made by me to Chadwick, of lots eighty-two and

eighty-three, in Dubuque. It was made by order of Montgomery. The deed that I had of the lots, was a security for money, and when the money was paid, I made the deed to Chadwick, by Montgomery's direction. I had loaned the money to Montgomery on those lots. He got the money with which to redeem the lots from Chadwick. I do not know the time, nor the terms, on which Montgomery borrowed the money from Chadwick. I do not know exactly when I made the conveyance to Chadwick. The time I let Montgomery have the money for, run out in December, 1845.

*Cross-Examination.*—A bond from me to Montgomery for the lots was made out, but he never got it. It laid in Farley's safe a long time. I understood from Montgomery, that he was getting money from Chadwick to release the lots. Farley is a merchant, and a general business man. I employed him a good deal, in writing bonds, mortgages, deeds, notes, &c., and in collecting money and paying taxes. Farley wrote the bond for Montgomery, and laid it in his desk, and it laid there until the time run out.

*J. P. Farley.*—Age, 45 years. Residence, Dubuque. Know both the parties. I signed the bond, marked exhibit "A." That is my signature. I have seen Chadwick's signature, and believe his signature to the bond to be genuine. The bond is my hand-writing. I take it for granted, from the signature to the bond, and from my best recollection, that I wrote said bond at the request of the parties. In those days, I was in the habit of doing writing for Chadwick and Montgomery, both. Richard Waller never was the *bona fide* owner of lots eighty-two and eighty-three, in Dubuque. I was the agent of Waller, for loaning his money, for the payment of taxes on real estate, and for the transaction of other business. He was in the habit of loaning money solely upon real estate—taking an absolute deed, and giving a bond back.

*Cross-Examination.*—I have written a great many bonds similar to that marked "A." The form is very familiar to me. I have no recollection of seeing any money pass from

Chadwick to Montgomery, at the time I drew the bond, nor do I recollect of hearing anything, by either of them, of any money being loaned by one to the other. I understand that Montgomery has lived in Galena for the last eleven years.    He is a colored man.    I have every reason to think, that Chadwick was aware of the contents of the bond, when he signed it.

Upon the hearing, the district court rendered a decree dismissing the bill of complainant, at his costs, from which he appeals.

*Vandever, Friend & Shiras,* for the appellant.

In equity, the character of the conveyance is determined by the intention of the parties ; and any agreement in the deed, or in a separate instrument, showing that the parties intended the conveyance as a security for the repayment of money, will make it such, and give to the mortgagor the right to redeem.    4 Kent's Com., 145 ; 8 Paige, 250, 251, (note).    And subsequent contracts between the parties to give the mortgagee an interest in the premises, are, in equity, discouraged.    4 Kent, 147 ; 4 Johns. Ch., 167.

If the deed be absolute in the first instance, and the defeasance be executed subsequently, it will relate back to the date of the principal deed, and connect itself with it, so as to render it a security in the nature of a mortgage. 4 Kent, 144.    If it be doubtful whether the parties intended a conditional sale, or a mortgage, courts of equity will incline to consider it a mortgage, as more benign in its operation.    4 Kent, 148, (note).

Where mortgagee obtains possession, before foreclosure, he is accountable for the actual receipts of the net rents and profits.    4 Kent, 173.    And where a mortgagee is put in possession of the lands, or where he enters after forfeiture, he becomes a steward to the mortgagor, and is subject to account with him for the rents and profits of the estate.    1 Comyn Digest, 584.

II.   The right of redemption in equity, like the right of entry at law, may be barred by a possession of twenty years.   Angell on Limitations, section 10, 494; but it would not be a statute bar.   2 Hilliard on Mortgages, 15.

Time, in a court of equity, has been taken, in analogy to the statute of limitations.   But, by the expression in analogy to the statute, we are not to understand that courts of equity will take the same period that the statute has forged for the courts of law.   2 Hilliard on Mort., sec. 34, 5, referring to *Hammonds* v. *Hopkins*, 3 Yerg., 528.

The same disabilities which prevent the operation of the statute of limitations in other cases, will also obviate the effect of a lapse of time upon the rights of mortgagor and mortgagee.   Hilliard on Mort., sec. 35, 16.   Any act of the mortgagee, by which he acknowledges the transaction to be still a mortgage, within twenty years from the time when the bill was brought to redeem, will preserve the right of redemption.   Angell on Lim., 495, sec. 12 ; Hilliard on Mort., sec. 40, 17.   Also, where an account has been settled.   Ibid, 495, sec. 11 ; Hilliard on Mort., sec. 41, 17.   See, also, secs. 42, 43 and 44.

No person can plead the statute, unless his possession has been adverse.   Ang. on Lim., 404, sec. 6 ; also 410, 411, 412 and 415 ; 5 Cowen, 346.   The mere fact of possession, will not, simply of itself, however long continued, bar the right of entry.   Ang. on Lim., sec. 5, 400 and 401 referring to doctrine of U. S., Sup. Court; 24 Wend., 591.   From the foregoing authorities, it follows, that adverse possession is a fact to be proved, not to be presumed.

Chadwick, in his answer, admits that after he had entered into possession, and after the 1st of April, 1847, he frequently offered to let Montgomery redeem.   He thereby admitted the mortgage, and admitted an account.   This was subsequent to the time when his witness, Mary Ann West, says she heard a conversation about Montgomery renting the premises.

As between mortgagor and mortgagee, the fact of adverse possession cannot be presumed, it must be proved—

by general rule, they stand in the relation of landlord and tenant, and their possession is not adverse. Angell on Lim., 486, sec. 3—secs. 1 and 2, 485.

Contracts made with the mortgagor, to lessen, embarrass, or restrain the right of redemption, are regarded with jealousy, and are generally set aside as dangerous agreements, founded on unconscientious advantages, assumed over the necessities of the mortgagee. 4 Kent, 163.

In New York, a mortgage is only a chose in action, and the only right the mortgagee has in the law itself, is to take possession thereof, with the assent of the mortgagor, after the debt has become due and payable, and to retain the land until the debt is paid. *Warring* v. *Smith*, 2 Barb. Ch., 134.

The answer of defendant, being a deliberate answer, under oath, is evidence against him of all the matters it contains. 3 Greenlf. Ev., 264, sec. 277.

III. By analogy to the limitation act of 1843, this cause of action would be barred in twenty years, and under the Code it would be barred in ten years from July 1st, 1851. Montgomery was a non-resident of the State, down to the time of the passage of the act of 1851. Consequently, no act had begun to run against him, prior to that time, and he is therefore entitled to ten years, under the Code. Under the Code, Montgomery has the legal title—the right to the possession. Section 1217.

If it be claimed that the slight evidence of Montgomery's having once or twice temporarily visited Iowa, takes the case out of the old statute, it may be satisfactorily replied, that the statute would begin at the time of such temporary return, and it would devolve upon the defense to show the precise time of the return. If you fix the time of Montgomery's return in the spring of 1847, when it is contended that there was some talk about renting, then the subsequent offer of Chadwick, to allow him to redeem, which is set up in defendant's answer, takes the case out of the statute. It devolves upon the defense to show, that the period given by the statute has expired since his return. This they have not done.

A statute should never be interpreted, or construed, to divest acquired rights, or limit existing privileges, if there be any other interpretation not inconsistent with the language of the act. 1 Green.,338; 2 Ib., 184, 243.

IV. The mortgagee is certainly not allowed for improvements, unless they increase the value of the estate. *Godon* v. *Lewis*, 2 Sumner, 150. The general principle in chancery, though not without exceptions, is, that a mortgagee in possession, is not to be allowed for new improvements erected on the premises—otherwise, mortgagors would be at the mercy of mortgagees. The latter might, from whim or caprice, make what he chose to call improvements, but what the mortgagor may not want. *Doughts* v. *McCoglan*, 6 Gill. & Johns., 275. So, where a mortgagee makes improvements on the property, though of a beneficial character, he does it at his peril; he has no right to look for an allowance by the mortgagor. He might in that way prevent the mortgagor from redeeming. If improvements are made by the mortgagee, they are voluntarily made, and he cannot afterwards claim an allowance for them. He must suffer the loss. He is not bound to expend his money, except for necessary repairs. *Clark* v. *Smith*, 1 Saxton, N. J., 123; 1 Johns. Ch., 385; *Russell* v. *Blake*, 2 Pick., 505; 2 Story's Eq., sec. 1016.

An examination of authorities in conflict with this doctrine, will disclose that they are mere *dicta*, without examination; or, where there was an acquiescence, and no question was made.

*A. Adams* and *Wm. B. Allison*, for the appellee.

I. Chadwick has occupied the premises for more than ten years next prior to the commencement of this suit. This is admitted.

II. By chapter 99 of the Code, no action could be brought for the recovery of real property, after July 1, 1856, except within ten years after the cause of action accrued. Ten years is the time prescribed by the Code,

Montgomery v. Chadwick

within which an action for the recovery of real property must be brought. To this limitation there is but one exception, viz : that contained in section 1672 of the Code, providing that not less than five years must be allowed after the Code. To this exception there is an exception contained in section 1673, that five years after the Code shall not be allowed, if a shorter period will make the complement of twenty years. Enough time, after the Code, must be allowed to make in all ten years, for the Code provides, that actions for the recovery of real property, may be brought at any time within ten years, and shall be brought in no case afterwards, except as provided in section 1672. This exception is not general; but is limited by section 1673, which provides, that in certain cases, actions may be brought *within* five years after the Code. But inasmuch as the Code has been in effect more than five years, viz : since July 1, 1851, neither section 1672 nor 1673, can have anything to do with any action brought for the recovery of real property since July 1, 1856. Our only inquiry in regard to any action brought now for the recovery of real estate is : Did the cause of action accrue more than ten years ago ? If so, the action is barred.

The reason for the provisions contained in sections 1672 and 1673, is evident. As the time within which actions for the recovery of real estate must be brought, was shortened by the Code, no one affected should be taken by surprise, but should have five years after the taking effect of the Code, unless the five years so added would make in all more than twenty years.

Again : the statute of limitations by an express provision contained in section 1671, embraces cases where the cause of action had already accrued, &c., and thus far is retroactive. Had the legislature stopped there, without adding the two succeeding sections of the same chapter, all actions for the recovery of real property, the cause of which had accrued prior to the Code, would immediately upon the taking effect of the Code, have been cut off. This would have been unjust, for persons who had had a cause of ac-

tion for ten years, would have been taken by surprise. While relying upon the old statute of twenty years, they would unexpectedly lose their right of action, and suffer irretrievable injury. To remedy that difficulty, it is provided in section 1672, that the times hereafter allowed shall not be less than one-half the period therein respectively prescribed. Had the legislature stopped there, all actions for the recovery of real property, of which the cause had accrued before the Code, but not barred, would have had five years to run after the Code. This, in some cases, would give a longer time than was allowed by the old statute, in contravention of the policy of the Code, which is to shorten the time within which actions for the recovery of real property must be brought. If, for instance, nineteen years had run under the old statute, the addition of five years would make twenty-four years. To provide against such a contingency, and only for that purpose, section 1673 was added.

III. Courts of equity have adopted the same periods of limitation, (in like cases), as the statute provides for courts of law. Angell on Limitations, ch. 3, secs. 1 & 2 ; *Pugh* v. *Bell*, 2 Monr., 127 ; Story's Eq. Jur., sec. 529.

IV. The Statute of Limitations applies to the redemption of mortgages, where the mortgagee is in possession under the mortgage. Coote on Mortgages, 593 ; 2 Hilliard on Mortgages, sec. 3 and 4 ; Angell on Limitations, ch. 34, sec. 10 ; 1 Johns. Ch., 385 ; 3 Ib., 129 ; 2 Leading Cases in Equity, part 2, 428 and 429 ; 6 Maddock's Chancery, 118 ; *Gates and Wife* v. *Jacob et al.*, 1 B. Monroe, 209 ; *Hughes* v. *Edwards*, 9 Wheaton, 497 ; *Elmendorf* v. *Taylor*, 10 Wheat., 168 ; *Thomas* v. *Harvey's Heirs*, 10 Wheaton, 150 ; 2 Story's Eq. Jur., sec. 1028, *a ;* 4 Kent, 186 ; and cases cited in note B ; 4 Johns. Ch., 140.

V. The statute commences to run when the mortgagee takes possession. 2 Story Eq. Jur., sec. 1028, *a*; 1 Ib., sec. 529. For a still stronger reason, if necessary, the Statute of Limitations applies where the possession of the debtor is adverse, as in the case at bar.

VI. The case being in the statute, is it taken out of the statute by any accounting on the part of Chadwick, within ten years? Or by any recognition of a subsisting mortgage within ten years? Clearly not. If so, it must be affirmatively shown by the complainant, and is not so shown.

. It is true, it is admitted in the answer, that after the expiration of the bond, Chadwick frequently offered to deed. But it is not now proved, (but expressly denied), that he offered to deed, or in any way recognized a ubsisting mortgage, after the 8th day of June, 1847.

VII. The complainant is not saved from the operation of the statute, by any disability of the plaintiff : 1. Because it does not appear, as is claimed, that the plaintiff was beyond the limits of the Territory at the time his right of action accrued. This is for the plaintiff to prove, and if it had been true, he could easily have done so. 2. Because the Code, by sections 1671, 1672 and 1673, bars this cause of action, even if the plaintiff was beyond the limits of the state when the cause of action accrued.

VIII. Montgomery released his equity of redemption. This is proved, by the fact that Montgomery abandoned the lots for more than ten years; that Chadwick went into possession under the deed, and with the knowledge of Montgomery, exercised acts of ownership inconsistent with any other supposition than that Chadwick claimed the fee; and that Montgomery saw the extensive improvements of Chadwick, and during all this time, made no claim to the lots for several years, and not in fact, until without ceremony, he commenced this action to redeem.

IX. Montgomery has no equity in this case, for so great has been the rise in the value of property in Iowa, and so high the rate of interest, that if Montgomery is permitted to recover, it will work a peculiar hardship upon Chadwick. It does not appear that the rent of the lots, without Chadwick's improvements, would have paid the taxes.

. X. By the equity rules of limitation, Chadwick cannot

be required to account after the lapse of ten years. See 1 Story Eq. Jur., sec. 529; 6 Maddock's Ch., 118. And as it cannot be made to appear without Chadwick's accounting, that the mortgage debt had been satisfied by the rents and profits, and as the plaintiff does not show that he has in any other way paid, or offered to pay, the mortgage debt, he has as yet no right of action against defendant, as the debt must first be paid.

*Vandever*, *Friend* and *Shiras*, in reply.

It has been contended by the defendants, that the limitation act of the Code, was designed to operate retroactively in all cases; and it would appear by their course of reasoning, that but for the provisions of sections 1672 and 1673, such retroactive operation would be irrespective of all previous acts, and without qualification. They seem to hold, that the statute began to run against Montgomery at the time Chadwick entered into possession, (which time, by the way, we contend they have not shown); and this being one of the causes of action, whose period is not enlarged, we are entitled to so much time under the Code, as will make up the complement of time allowed under the previous act, not to exceed five years. We maintain that we are not only entitled to the five years under the Code, but that we may have the whole ten years, which it prescribes within which to bring our action, provided we do not run beyond the period limited in the previous act—and that the same rule applies in all cases, except when the Code does not enlarge the period originally limited; and then only so much time shall be allowed under the Code, as will make up the complement of the previous limitation act, whether it be more or less than one half the period provided by the Code. Here is the point upon which the whole controversy turns.

Looking a little more narrowly at the rule of construction contended for by the defence, they seem to say, that we cannot have more than five years under the Code. Sec-

Montgomery v. Chadwick.

tion 1672 prescribes that in relation to causes of action not barred by the previous statute, *not less* than one half the period allowed by the Code shall be added to the time previously run. Now, if the construction put upon this section by the defence, is the correct one, then we make the expression "*not less*," which it contains, to mean *not more*. That such is not the intent of the law, we refer to section 26 of the Code, part second of said section.

If, as is contended by the defence, in another part of his argument, it is the object of the Code to restrict all causes of action accruing before or after its passage, to the periods of limitation it prescribes, then sections 1672 and 1673 must be regarded as superfluous or redundant, for the language of section 1671 effectually secures that end, without the regulations contained in the following two sections. But, say the defence, the reason of sections 1672 and 1673 is evident—that as the Code shortened the time within which actions for the recovery of real property should be brought, to prevent the surprise of suddenly terminating the time within which to bring suit in such cases, these two sections were added. And then, for an example, the defence supposes a cause of action in regard to the recovery of real property, to have accrued ten years prior to the Code. We reply to this, that the case is not a supposable one, for the previous limitation act did not date its operation further back than the time of its passage in 1843, and hence, no previous statute could have run upon actions of that kind, longer than eight years prior to the Code.

The reason for giving the additional time prescribed in section 1672, could not be, as stated by the defence, in regard to actions on promissory notes ; for the previous act allowed only five years, while the Code increases the time to ten years, and if section 1671 secures all the time, or as much as was allowed under the previous act, there was no necessity for guarding against surprise. In such a case, a party could not possibly be taken by surprise, if the new law secured him all the time he had under the old law— though the limitation should expire one day after the new

took effect.   In relation to unwritten contracts, the period of limitation is the same under both acts; and the reason which the defence assigns for the rule of sections 1672 and 1673, cannot be demonstrated by an example of that kind. Nor do we think any case, real or hypothetical, can be found to illustrate the reason which the defence assigns for the last named sections of the law.

Then, if the reason suggested by the defence for sections 1672 and 1673, is not the real one—what, we ask, is the true object of these two sections?   We answer:   The Code, in adopting a new rule of limitation, does not seek to deprive parties of the benefit of the former act, in regard to all causes of action upon which it had begun to operate; with this restriction only, that after the ·1st of July, 1851, not more than the time limited in the Code, shall be allowed to run upon any cause of action not previously barred—nor less than one-half the period limited by the Code shall be allowed, except where the Code does not enlarge the time.   In such cases, the whole time allowed by the previous act, is secured, and no more.   Now, if, as the defence admit, the Code secures the whole time of the previous act, in regard to one class of actions, not yet barred; then, unless the terms of the new law forbid the indulgence of the rule to all actions not barred—what chance for prejudice or surprise, by the operation of such a rule?   Certainly, the contrary rule might prejudice and surprise many parties.

In short, wherever the Code does not enlarge the time of limitation, the time previously limited is allowed; and wherever the Code does enlarge the time, the cause shall continue to run, at least one-half of the time it prescribed, and it may run the whole time prescribed by the Code, and not beyond; provided only, that in giving such additional time, we do not overrun the. time limited in the previous act.   This· construction, we conceive, is fairly within the meaning of the law, and harmonizes every section—and every expression in every section—and avoids the forced

and unnatural construction which gentlemen seek to apply to sections 1672 and 1673.

In *Hummer* v. *Hummer*, 3 G. Greene, 42, the court say: Where two statutes are passed at different times, in relation to the same subject matter, the subsequent act does not repeal the former, if both can be made to harmonize. This, we do not doubt, is the correct rule of construction to be adopted by the court in regard to the limitation act. Section 1671 provides that the provisions of chapter 99 are intended to apply to causes of action which have already accrued,·and not yet barred, subject to the regulations contained in the following two sections. But·for this clause, the limitation act of 1843, would have been unconditionally repealed as to all causes not barred under its provisions.

The act of 1843, then, being retained as to all causes of action, not barred under its provisions—the court will adopt that rule of construction which most perfectly harmonizes its provisions with the Code. We think the rule we have suggested fully accomplishes this end. By this rule, Montgomery has not only five years, after the Code·took effect, within which to bring an action at law, but .he has all the time which the Code allows, within the period limited. by the previous statute, after the cause of action accrued; that is, he has ten years under the Code.

WOODWARD, J. *—Without stating all the differences on the facts, which arise between the parties, we shall state and consider them, as they appear to us in the result.

In December, 1843, the complainant borrowed money of Richard Waller, and conveyed to him as security, lots number eighty-two and eighty-three,in the town of Dubuque, by a deed of absolute conveyance. At the maturity of the debt, he borrowed of the respondent, and discharged Waller's claim, and caused the latter to convey the same lots to Chadwick. This was done in July, 1845. In July, 1846,

---

* WRIGHT, C. J., dissenting.

.Chadwick executed to Montgomery a bond, reciting that the latter had borrowed of the former the sum of $225,00, and to secure the payment of the same, had "deeded to him, through Richard Waller," the said town lots, and with a condition, that if said Montgomery should pay the said Chadwick the sum of $251,66, on the 1st of December, 1846, then the latter should recover the lots, and in case of a failure to pay, the obligation was to be void.

The respondent, first, denies that this transaction amounts to a mortgage, but urges that the obligation given by him, is but a bond to convey, on terms which have been forfeited. We cannot regard it otherwise than as a mortgage. The bond of the defendant is explicit, that there was a loan of money, and that the payment of this, was secured by the lots conveyed through Waller. It is a much stronger case, in the claim to be regarded as mort gage, than many which have occurred. It is unnecessary to refer to authorities beyond those of complainant's brief. The testimony of Waller, also, goes to confirm this view.

In the next place, the defendant sets up the lapse of time, as a bar to the right to redeem, in analogy to the statute of limitations. The time for payment in the original bond of Chadwick, was December, 1846. By an indorsement thereon, he extended the time to the 1st of April, 1847. This suit was commenced in June, 1857. Admitting the existence of a limitation in equity, in analogy to the statute, the question is to be tried, as if the complainant had brought his action to recover possession; and we will inquire how the provisions concerning limitation are to be applied. Code, sections 1671, 1672, 1673.

The statute limits real actions, or those for the recovery of real property, to ten years. This ten years dated from the accruing of the cause of action, and not from the taking effect of the statute. Section 1671 makes the statute retrospective, or applies it to existing causes of action. But causes of action then existing, and not barred by the former act, were to be allowed, after the passage of the Code, not less than one-half the

time therein prescribed. This was directed, in order that causes then existing, should not be suddenly and unexpectedly cut off, which, it has been held, could not legally be done. The time therein prescribed for real actions, was ten years, and, of course, one-half that time was five years.

If the complainant's right accrued prior to July 1, 1851, he was entitled to at least five years in which to commence his action. This time he did have before he commenced, for his action was broght in June, 1857. But he was entitled to ten years from the time his right accrued. He sued in June 1857, and this brings us to the question, when his right, or cause of action, first arose. These are all of the provisions relating to limitation, which apply to the complainant's case, for the remaining section 1673, only provides that, in cases in which the time allowed by the former act is not enlarged by the Code, the party shall not have more time in all, than was allowed by the previous act. In the case of real actions, the time is not enlarged, but is lessened. This section would have applied, if the right had accrued, for instance, in 1835. Then section 1672 would have given the "one-half," or five years, but qualified by section 1673, by which his whole time should not exceed the twenty years given by the former act; and than he could have only so much of the one-half or five years as would complete the former limitation of twenty years. This case, together with that of *Wright* v. *Keithler*, *ante 92*, overrules *Phares* v. *Walter*, 6 Iowa, 106, upon the point of limitation in actions for realty.

We now inquire, when the cause of action arose? The defendant pleads that it did not accrue within ten years before the commencement of the action. On this point, the testimony is very indefinite, and leaves the mind uncertain.

The evidence shows that Montgomery left the lot, in the fall of the year 1846, and either then, or in the spring following, went to Galena. It shows that Chadwick was in possession of the lots in the spring of 1847, and one witness says, " early in the spring." Perhaps we might say, he was in possession before June—the month in which the

action commenced in the year 1857—but for ought that appears, he may have gone into possession when Montgomery left in the fall of 1846, or in the spring before the debt fell due, which was the first of April, 1847.

.. Now, the right of action to redeem, did not accrue to Montgomery, and consequently the statute would not begin to run against him, until Chadwick took possession, or began to hold the possession, for the purpose of foreclosure; and this must be found from his acts, and the circumstances. The testimony fails to determine this, and even to show whether his possession began before or after the debt became due. Of course, therefore, the respondent fails to sustain his answer in this respect, and we are led to consider the question relating to accounting, and to the improvements.

We think Chadwick should be held to account, and be allowed for the improvements. He answers that, in consequence of the length of time passed, he is unable to render an account. When he is thus unable, the rule is, that he be charged with a fair occupying rent. *Gordon* v. *Lewis*, 2 Sumner, 150 ; *Clark* v. *Smith*, 1 Saxton, (N. J.) 23. But regarding it as rent, or use and occupation strictly, to be set off against the debt, it is to be limited to the property as it was, exclusive of the improvements.

We then come to the question of the improvements. The general rule is, that the mortgagee in possession, is not entitled to allowance for such as he may have made, (although it be for necessary repairs); for in this way he increases the difficulty of redemption, by requiring the debtor to pay more money ; and further, he may thus compel the debtor to pay for that which he does not wish. But, as the books hold, *under some circumstances*, he may be allowed for valuable and lasting improvements—those which increase the value of the estate. See the cases above cited, and *Dougherty* v. *Colgon*, 6 Gill. & J., 275, and authorities in argument of counsel. In allowing them in the present case, however, it is under the consideration that they shall be made from the rents and profits. And in this point of

Montgomery v. Chadwick.

view, the rents are to be calculated on the improvements themselves, as well as the lots, as they were before these were put upon them. And here, too, if the mortgagee is unable to render an account of sums received, he is to be charged with a fair occupation rent.

Whilst Chadwick has been in possession, Montgomery has been living at Galena, and but a few miles from Dubuque. He is proved to have been in the latter place, at least twice, and from the circumstances shown, we cannot avoid the supposition, that he was there a greater number of times, in the period of nearly ten years, and that he must have known that the mortgagee was making improvements; and there is no evidence that he interposed any objection. In view of these, and of all the circumstances developed, we are induced to allow the mortgagee for his improvements, he accounting for their rents toward that end.

The cause is therefore remanded, with directions to the district court, to cause the respondent to account for the rents and profits of the lots, without the lasting improvements, and for these improvements separately. And if it appear to the satisfaction of the court, that he cannot thus account, that he be charged with a just occupying rent, the rents of the lots in the state in which the respondent received them, being first applied to the extinguishment of the debt and interest, and the balance, if any, to the payment for the improvements; and the rents of the improvements being applied to the defendant's remuneration for them. And should it be found that there is a balance due the mortgagee, in respect to his improvements, the mortgagor is entitled to his election, whether to pay such balance in money, or to permit the mortgagee to hold possession until he is remunerated; and the district court will make such orders, from time to time, as may be necessary to carry this decree into effect; and the decree heretofore rendered by the district court, in this cause, is reversed.

WRIGHT, C. J., *dissenting.*—I desire to say, that I am

satisfied from the proof, that respondent had actual contin-
uous possession of the property in controversy, with the
intention to foreclose, for more than ten years before the
institution of this suit—and, as a consequence, under the
rule laid down in the foregoing opinion, I should be com-
pelled to hold, that complainant's action was barred—my
conclusion from the testimony, is different from that arriv-
ed at by a majority of the court.     I think the decree be-
low should be affirmed.