Charles H. Kinkead, Appellant, v. R. M. Peet, Appellee.

**Accounting:** APPEAL: REVIEW. The appellate court in a suit for an accounting, involving a large number of items, will not act as a master in chancery and state the account between the parties, where the decree appealed from gives no intimation of the claims allowed and disallowed, but will classify the items, giving its view thereon, and remand the case for the entry of judgment in conformity therewith.

**Mortgages:** MORTGAGEE IN POSSESSION: ACCOUNTING. A mortgagee in possession holds the property in trust for the benefit of the mortgagor after payment of the debt secured thereby, and where action is brought to redeem it becomes the duty of the mortgagee to promptly account for his trust.

**Same.** Where a mortgagee in possession is entitled to wages paid for labor on the mortgaged premises he is also entitled to the cost of boarding the laborers.

**Same.** A mortgagor entitled to redeem from a mortgagee in possession may recover for waste committed to the material injury of the premises.

**Same:** ACCOUNTING FOR REPAIRS. A mortgagee in possession may make such repairs as are reasonably necessary to preserve the estate in the condition in which he received it, and is entitled to credit therefor in a settlement with the mortgagor who is seeking to redeem; but generally he may not go beyond necessary repairs and make betterments at the expense of the mortgagor or of the property itself unless by the mortgagor's express or implied consent. Under this rule the cost of tiling, the erection of new buildings or reconstruction of old ones should not be allowed the mortgagee.

**Same:** COST OF RELEASING ATTACHMENT. The amount a mortgagee in possession was compelled to pay to release the property from an attachment, with interest from the date of payment, but not including costs of suit, should be allowed the mortgagee in an accounting upon redemption, especially where it was contemplated by the parties that the mortgage should stand as security therefor.

**Same:** SERVICES OF MORTGAGEE IN POSSESSION. A mortgagee in possession should not be allowed for his own services in connec-

tion with the mortgaged property voluntarily rendered and for his own benefit and protection.

Same: REDEMPTION: TENDER: INTEREST. Where the amount required 8 to redeem from a mortgage is liquidated and no accounting is required, a sufficient tender will usually arrest the accumulation of interest; but where the mortgagor is in court claiming payment, or a material reduction of the debt because of equitable counterclaims which he insists should be treated as payments, and is asking for an accounting, the rule does not apply. Yet where the mortgagee denies the trust and prolongs the litigation, as in this case, it is proper to compute the interest without annual rests or compounding the same.
Evans, J., dissenting.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

THURSDAY, OCTOBER 26, 1911.

THE opinion states the nature of the action and the material facts.—*Reversed* and *remanded.*

*Rickel & Dennis,* for appellant.

*Jamison, Smyth & Hann,* for appellee.

WEAVER, J.—At the outset of the transactions from which this controversy has arisen, the plaintiff, Charles H. Kinkead, was the owner of two hundred and seventy-six acres of land in Linn County, and a house and lot in the town of Springville. A mortgage upon said land was made by Kinkead and wife to Helmer & Gortner to secure the payment of a note for $13,000, bearing date June 19, 1902, of which note and mortgage the defendant, Peet, thereafter became owner by assignment. Soon thereafter a second mortgage on the same property was made by Kinkead and wife to James K. Hakes to secure an indebtedness of $9,000. Later Hakes assigned this mortgage to Peet as collateral security upon a debt of his own. In

November of the year 1904, Kinkead and his wife having separated, she brought suit against him for divorce and alimony, and in aid of her claim procured a writ of attachment and levied upon her husband's personal property, which was of considerable value. On or about November 18, 1904, after negotiation between Kinkead, his wife, Peet, and Hakes, Mrs. Kinkead released her attachment, and subsequently the divorce proceedings were abandoned. At the same time Kinkead and his wife united in the execution and delivery of a deed of the real estate to Peet. They also gave him a bill of sale vesting him with the legal title to all their live stock and other personal property. Later Peet took possession of both real estate and personal property, and asserted absolute ownership thereof in himself. Thereafter Mrs. Kinkead brought an action at law against Peet and Hakes to recover the sum of $3,000 which she alleged they had promised to pay her in consideration of the release of her attachment above mentioned and of her uniting with her husband in the conveyance to Peet. In this she was successful, recovering a judgment against both Peet and Hakes for $3,000 and interest. On appeal to this court said judgment was affirmed. *Kinkead v. Peet,* 136 Iowa, 590. About the same time the husband, Charles H. Kinkead, brought an action in equity to have the deed and bill of sale decreed to be in the nature of a mortgage only, and that he be permitted to redeem therefrom, and Peet be required to account for the personal property received under said bill of sale, and for waste, rents, and profits of the real estate. On trial in the district court Kinkead's petition was dismissed, but on appeal to this court said decree was reversed, the deed and bill of sale were held to constitute a mortgage only, and the cause was remanded to the district court for an accounting and determination of the amount which plaintiff must pay to make redemption. *Kinkead v. Peet,* 137 Iowa, 692. A trial of this question was thereupon had

and the remainder due to Peet after crediting the plaintiff
with all allowances was found to be $24,427.41, and time
fixed within which it should be paid. From the decree
so entered the appeal now before us was taken.

I. The foregoing somewhat protracted statement has
been thought necessary to make easier of comprehension
the attitude and claims of the respective parties. We
shall not, however, go into any consideration
of the merits of the earlier controversies to
which we have made reference. They have
been fully and finally adjudicated by the decisions of this
court upon the two former appeals, and the single inquiry
now left is the matter of accounting. It is much to be
regretted that the decree of the trial court is wholly gen-
eral in its finding, and gives us no hint of the particular
claims and counterclaims which were allowed or disallowed
in computing the amount required to redeem. The only
basis of inference as to these matters is derived by com-
paring the remainder adjudged to be due from the plaintiff
with the claims made by the parties in pleading and argu-
ment, and from this it would seem that substantially all
the defendant's claims were found to be just and equitable,
and that the credits claimed by the plaintiff except for
rents and profits and a few other items were generally
disallowed. It seems evident, also, that defendant was al-
lowed interest, not only upon the mortgage debts held by
him, but also on all the several claims included in his
accounting.

In reviewing a decree so entered upon a record such
as is here furnished, we do not think this court is called
upon to perform the functions of a master or referee in
chancery, and state the account between the parties in de-
tail. The items involved are hundreds in number, rang-
ing from hog hooks and spinning wheels to blooded live
stock, and from lumber wagons and harvesters to chickens
and rat traps. They include, also, claims for rents and

*1. ACCOUNTING: appeal: review.*

waste and conversion, on the one hand, and for repairs and improvements and multitudinous alleged expenditures and services, on the other. We shall therefore content ourselves with attempting a classification of the conflicting claims and demands into convenient groups, and, after indicating our views with respect thereto, shall remand the case for the entry of a decree accordingly. This is the more necessary as we may assume that other rents and profits have accrued and other taxes paid since the entry of the decree appealed from.

The nature of the claims or credits demanded by the plaintiff is as follows: (1) For the value of the personal property alleged to have been turned over to or converted by the defendant. (2) For use and rents and profits of the land after plaintiff was ousted by defendant. (3) For waste committed upon the property while in defendant's possession. On the other hand, defendant, while denying liability on a large part of these claims, asks to be allowed (1) for the amount of principal and interest unpaid on the first mortgage debt; (2) for the amount of unpaid principal and interest on the second mortgage debt; (3) for money expended in payment of plaintiff's debts at his request; (4) for amount of the judgment interest and costs recovered by the wife of plaintiff against defendant and paid by him; (5) for costs of repairs on buildings during the defendant's occupancy of the land; (6) for tiling and other improvements upon the land during said occupancy; (7) for taxes paid; (8) for labor and services expended by defendant in caring for the property; (9) for interest on each item charged in his account from date thereof to final decree.

As a starting point for the consideration of these matters, it is well to recall the situation in which the prior litigation had left plaintiff and defendant.

It had been determined that the deed and bill of sale to defendant were in equity a mortgage only. Defendant's

legal title and possession were therefore held by him in

trust for the benefit of plaintiff after the payment of the indebtedness thereby secured. When, therefore, the plaintiff demanded the right to redeem and brought action for its enforcement, it was the duty of the defendant to promptly make accounting of his trust, present a showing of the secured indebtedness and other claims, if any, which were equitably chargeable against the mortgaged property, and thereon to give due credit for rents and profits and 'for all personal property, if any, which he had received from the plaintiff and converted to his own use. The extent of his right was the recovery of the balance or remainder thus ascertained, and this the court would have secured to him by a proper decree. This trust he wrongfully repudiated, and resisted the plaintiff's right of redemption through a protracted litigation. It was while thus denying his trust and asserting absolute ownership in himself that the bulk of his claims in addition to the mortgage debts accumulated. During all this time the plaintiff has stood in court seeking to exercise his right to redeem, and demanding as a necessary preliminary thereto that defendant make an accounting, and that the remainder due on the debt be ascertained. This attitude of the parties and their relation to each other and to the property have a material bearing upon the controversy, as we shall hereinafter have occasion to notice.

II.    The bill of sale taken by defendant was made to cover all and every kind of personal property on the farm, among which it is conceded there was a drove of hogs, horses, cattle, vehicles, farm machinery, tools, and appliances with which the average farm is supplied. There was also a large field of corn, mostly unharvested, variously estimated at from one hundred and sixty-two to two hundred acres. No part of these things has ever been restored to the plaintiff, and he is obviously entitled to credit therefor. Defendant concedes that he sold a part of the hogs

for $1,359.14, and made use of certain others which the
evidence shows were worth about $75, and, as this was
done before defendant denied the mortgage character of the
transfer of property and the parties seem to have treated
the delivery of the hogs as a payment upon the debt se-
cured by such, transfer, it will be so treated here and ap-
plied as a payment at that date of $1,532. The item of
corn is the subject of much dispute, but we think the
weight of the evidence is to the effect that there was one
hundred and sixty-two to two hundred acres, yielding a
crop of which after allowing for the amount fed to the
Kinkead stock up to March 1, 1905, there was a remainder
which we estimate at 3,500 bushels, worth forty cents per
bushel. Against the last item plaintiff concedes defend-
ant to be entitled to credit, or deduction by the amount ex-
pended for husking to which credit reference will later be
made. Of the cattle there were six or seven cows, five or
six yearlings, one or two steers, and several calves. The
exact number and value of each is not agreed upon, but the
aggregate may be reasonably estimated from the evidence
at $375. There were also fourteen horses, over the value
of which there is the same wide divergence of estimates.
From the evidence taken as a whole on this branch of the
case we think plaintiff should have credit for them at an
average value of $120 each or $1,680. In addition to the
foregoing, plaintiff produces a very long list of farm ma-
chinery, implements, vehicles, and many miscellaneous
items of small tools and appliances which are apt to accu-
mulate on and about a large farm. Many of these appear
to have had substantial value, while many more could
not fairly be considered as worth more than a merely nom-
inal sum. Enthused by the prospect of a forced sale to
his antagonist, the plaintiff has persuaded himself that this
remnant of his personal estate was worth over $2,000;
while the defendant under the stress of opposing interest
thinks it was worth practically nothing. We shall not

attempt any reference to these items in severalty. The machinery, implements and vehicles and some of the more miscellaneous articles were clearly such as should be paid for, while many others may be passed as negligible. From the best data the record affords we estimate this list at $625, and plaintiff will have credit accordingly.

Coming next to the rental value of the farm since the ouster of plaintiff, we have to say it is shown to be not less than $3.37½ per acre per year. Defendant will concede no more than $2.75, while plaintiff's figure is $6.50. The testimony on both sides is largely of a partisan character, but the estimate above made is as near the proper figure as can be ascertained from the record. The matter of plaintiff's claim for waste and damage to the realty will be considered in a subsequent paragraph of this opinion.

III. Of the claims asserted by the defendant, plaintiff concedes that upon March 1, 1905, when defendant first definitely asserted absolute ownership of the property, there was due to defendant upon the first mortgage debt principal and interest to the amount of $14,257.14, and upon the second mortgage debt to the amount of $5,124.46, and that defendant was also entitled to credit for moneys expended in payment of claims against plaintiff to the amount of $575, for expense of husking the corn crop $108.35, and for taxes paid. We may therefore pass these items as established by consent. There appear to be other items of costs and expenses paid by defendant for plaintiff arising from the divorce proceedings for which he should be given credit to the amount of $107.60.

The credit conceded by plaintiff for wages paid for corn husking does not include an item for $24.50 paid for the board of the huskers. If, as plaintiff admits, defendant should be reimbursed for the wages of

3. Same.    these men, we see no good reason why he should not also have credit for this expenditure for board as well, and it will therefore be allowed.

IV. The plaintiff's claim for waste and damage and defendant's counterclaim for repairs and improvements may be considered together. Defendant having been deter-

4. SAME:

mined to be a mortgagee in possession from whom plaintiff as mortgagor is entitled to redeem, it is an elementary proposition, requiring no citation of authority, that, if during his possession defendant has committed any waste on the premises to the material injury of the realty, he is chargeable therewith in the accounting.

It is equally well settled that while in possession he may make such reasonable repairs as are necessary to preserve the estate in the condition in which he receives it,

5. SAME: accounting for repairs.

and will be allowed due credit therefor. The extent of this latter right has some equitable relation and proportion to the purpose and object of his possession. If the mortgagee assumes control of the property before condition broken to preserve and manage it for some indefinite period for the preservation or enhancement of his security, it may well be that more elaborate repairs would be held justified than would be the case where condition is already broken, and he takes possession simply to preserve the property and security pending foreclosure. In neither case, generally speaking, is he authorized to go beyond necessary repairs, and make improvements and betterments at the expense of the mortgagor, or of the property itself. *Montgomery v. Chadwick,* 7 Iowa, 114; *Moore v. Cable,* 1 Johns. Ch. (N. Y.) 385; *McAbee v. Harrison,* 50 S. C. 39 (27 S. E. 539); *McCumber v. Gilman,* 15 Ill. 381; *Marshall v. Stewart,* 80 Ind. 189; *Malone v. Roy,* 107 Cal. 518 (40 Pac. 1040); *Gresham v. Ware,* 79 Ala. 192. To hold otherwise would enable a mortgagee to increase the burden of the mortgagor without his consent, and perhaps make it impossible for him to redeem, and, as some of the books have put it, the mortgagee will not be per-

mitted to "improve the mortgagor out of his estate." Of course, where exceptional circumstances are shown indicating the mortgagor's express or implied consent to the improvements, such claims are sometimes allowed. See *Montgomery v. Chadwick, supra; Moore v. Cable, supra.* In the case before us there is no such consent shown. During the six years of defendant's occupancy, the plaintiff has not only been objecting to such possession, but has been in court, insisting upon his right of redemption. The improvements for which defendant claims compensation have been made while this litigation has been in progress, and, save so far as the work and the expense incurred may be classed as repairs necessarily made for the preservation of the estate, we know of no rule or principle of law which will enable him to charge the same to the plaintiff. The fact that the first decree in the district court was in favor of the defendant can not affect this situation, for the litigation has been continuous, and he must be held to have known the liability of an unfavorable final adjudication. He was at liberty, of course, to wager the cost of the improvements upon his judgment of the outcome, but he could not impose upon plaintiff any obligation to make him whole in case he should lose. *Malone v. Roy,* 107 Cal. 518 (40 Pac. 1040); *Gresham v. Ware,* 79 Ala. 192; *Miller v. Curry,* 124 Ind. 48 (24 N. E. 219, 374).

The improvements made by the defendant were not made under any pretense or claim that as mortgagee in possession he was exercising his right and duty to preserve the estate from deterioration and decay, but he was stoutly denying plaintiff's right therein, and asserting an absolute title in his own right. In *Mahoney v. Bostwick,* 96 Cal. 53 (30 Pac. 1020, 31 Am. St. Rep. 175), the defendant as in this case at bar took a deed absolute in form to secure the payment of the grantor's debt. Under this deed, he obtained possession of the land, but repudiated the mortgage agreement, and claimed the property as

his own. In an action brought to declare the deed a mort-
gage and for an accounting, defendant claimed credit for
fencing and ditching done by him on the premises. This
was denied by the trial court. On appeal this holding
was affirmed by the Supreme Court, saying: "The pos-
session of the defendant and all that he did upon the land
were acts hostile to the title of the plaintiff, and plaintiff
is not required in this action, upon any principle of law
or equity, to account to defendant for the value of the
improvements thus made by him. . . . The fence was
constructed by defendant for himself and in assertion by
him of a right to exercise adversely to plaintiff dominion
over the land upon which it was erected, and plaintiff
can not be made to pay for it, although it may appear
that he himself would have built it if he had not been
ousted from possession." It is suggested by counsel that
the work done by the defendant may be classed as repairs.
We think this can not be so as to the tiling which con-
stituted a large item of his claim. The same may be said
for the other large item for work done upon the barns and
other buildings. While this may in one sense be called a
work of repair, it was of that extraordinary and extensive
kind not contemplated by the law in the rule we are now
considering. The mortgagee's possession is of a temporary
character, and the extent of his duty in keeping up the
property is to make such repairs as will preserve the es-
tate from unnecessary waste or depreciation in his hands.
Except under quite extraordinary circumstances, he would
not be expected to put up new buildings or to reconstruct
old ones, and, if he surrenders the estate in as good con-
dition as he received, he has done his full duty. Beyond
that he acts as a volunteer. Undoubtedly the defendant
did expend some time and money in repairs of a legitimate
character for which he became equitably entitled to com-
pensation. The amount thereof is not large, but we shall
not undertake to state it in dollars and cents, for in our

judgment the utmost defendant is entitled to in compensation for repairs made is not in excess of the amount with which he should be charged for waste in the cutting of trees and removal of fences and other improvements. This claim and counterclaim may fairly be disposed of by setting them off and allowing each to extinguish the other.

V.   Concerning the judgment recovered by Mrs. Kinkead against defendant and since paid by him, we are very clear that he is equitably entitled to credit in this accounting. If the conveyance to defendant had been absolute in fact and not a mortgage, and he had procured Mrs. Kinkead to unite therein upon his promise to pay her $3,000, then, of course, her recovery from him of the agreed consideration would not of itself entitle him to demand reimbursement from her husband.   But it is not denied by plaintiff that his personal property was then under seizure by attachment at the suit of his wife.   At the same time defendant was the holder of one or more mortgage liens upon his land and upon part of the personal property.   In this condition the somewhat complicated transaction of November, 1904, took place, in which plaintiff was an active participant.   Plaintiff by the aid of defendant's promise to the wife obtained a release of the attachment, and immediately conveyed his entire estate, real and personal, to the defendant.   He claims, and the court has found, that these transfers were by way of security only, and we are satisfied that both parties understood the security to cover whatever sum defendant should pay to Mrs. Kinkead for the release of her rights, as well as the mortgage debt and other debts mentioned in the pleadings.   Defendant must, therefore, be credited with the sum of $3,000 so expended.   Concerning interest upon this item, the court is equally divided as to the date from which it should be allowed.   There is, however, an agreement as to its propriety from the time when the debt was actually paid, and interest will be computed

6. SAME: cost of releasing attachment.

on that basis.   No allowance to be made for costs or expenses incurred in that litigation.

VI.   Defendant can not be allowed compensation for his own services rendered with reference to the mortgaged property.   They were not rendered for plaintiff or at his request.   They were rendered presumably at defendant's own instance and for his own benefit and protection, and their value can not be tacked to the mortgage or assessed against the property.   Such is the quite universal holding of the authorities.   *Elmer v. Loper,* 25 N. J. Eq. 475; *Blunt v. Syms,* 40 Hun, 566; *Snow v. Warwick,* 17 R. I. 66 (20 Atl. 94); *Breckenridge v. Brooks,* 9 Ky. 335 (12 Am. Dec. 401); *Benham v. Rowe,* 2 Cal. 387 (56 Am. Dec. 342).

7. SAME: services of mortgagee in possession.

VII.   The several claims of the parties for allowance of interest may be disposed of as follows:  Compute the unpaid interest on the secured notes to March 1, 1905, the date when defendant ousted plaintiff and asserted title in himself.   Aggregate the several allowances hereinbefore made to the plaintiff (except rents and profits), and having deducted from this sum the credit allowed defendant for money paid out and expended for plaintiff (not including the judgment obtained by Mrs. Kinkead), apply the remainder as a payment of that date on the mortgage debt. Compute interest on the remainder without compounding and without rests to the date of the final decree.   Treat the yearly allowance for rents and profits, less taxes paid, as a payment made at the close of each twelve-month period, and compute interest thereon (at the mortgage rate) to date of decree, and, having applied the sum of these payments and interests to the sum of the mortgage debt and interest, the remainder will represent the amount required for redemption, save only the matter of defendant's claim on account of the judgment recovered by Mrs. Kinkead.   For this he should be permitted to recover the sum of $3,000, with interest thereon from the date when he actually paid

it, but such allowance will not include interest or costs accrued upon the claim prior to such date.

It is insistently argued by appellant that interest upon the principal debt should cease from the date when defendant resisted plaintiff's right to make redemption. It is true that where the amount to be paid

8. SAME: redemp-
tion: tender:
interest.

is liquidated, and no accounting is required, a sufficient tender by the debtor will ordinarily arrest the accumulation of interest, and, upon final judgment, the creditor will ordinarily be compelled to accept the amount due at date of tender without interest or cost thereafter accruing. But the case before us does not come within the principle thus conceded. Plaintiff is not in court tendering payment of an admitted debt. In effect, he comes into court claiming that his debt has been satisfied or materially reduced by certain equitable counterclaims which should be treated as payments, and asks an accounting concerning them. In the nature of things an accounting can not be had forthwith. Time must be taken for investigation and trial of the several issues raised, and it would be inequitable to say that pending such settlement defendant should forfeit all interest, and at the same time be held chargeable with the rents and profits of the land. It is true that he wrongfully denied the trust character of his title, and by his resistance of plaintiff's right to redeem has long postponed the day of settlement. For that reason, we provide that there shall be no annual rests or compounding of interest in his favor, but beyond that equity does not require us to go.

VIII. The rules stated and the conclusion reached in the foregoing paragraphs will result in materially reducing the amount required for redemption of the land as fixed by the court below. It follows that the decree appealed from must be reversed and cause remanded for adjustment of the accounting upon the basis hereinbefore indicated, taking into consideration rents and profits accrued and taxes

paid, if any, since the former trial. The costs of the appeal will be taxed to appellee. Let the decree when entered provide for plaintiff's right to redeem by payment of the amount found due within three months from the date of such decree.

*Reversed* and *remanded* with. directions.

EVANS, J. (dissenting).—I feel compelled to dissent from the majority opinion. So far as fact questions are concerned, there is much diversity and exaggeration in the evidence. I am impressed that the majority is unduly liberal toward the plaintiff in the allowances made in his favor. In view of the conflicting state of the evidence, I would not be willing to dissent from my brothers on that ground. There are, however, two or three definite points wherein the majority opinion in my judgment fails to administer equity to the defendant.

I.   I can see no reason, legal or equitable, why the defendant should not be allowed the full amount paid by him to the plaintiff's wife, including the interest thereon. Defendant, Peet, obtained his deed of the farm in the fall of 1904, and obtained, possession of the farm thereunder in March, 1905. At the time he obtained his deed, the plaintiff Kinkead's wife was prosecuting an action for divorce against him, and had caused a writ of attachment to be levied upon his property. It had been orally agreed between Kinkead and his wife that her alimony should be $3,000. On March 14, 1905, she brought an action against Peet to recover $3,000. She alleged that Peet had orally agreed with her to pay the same in consideration of her signing the deed and releasing the attachment. Peet denied then, and denies now, that he ever made such an agreement with Mrs. Kinkead. In the trial of such action the evidence was such as to have warranted a verdict by the jury for either party. The verdict was for the plaintiff, and the final outcome of the litigation was that Peet

was compelled to pay $3,000 with interest from March, 1905, amounting to $3,511, not including any costs or expense of trial. Kinkead aided his wife in the recovery of the judgment against Peet, although he did not testify that Peet had agreed with him to pay the same, nor was he present at the alleged conversation with the wife. There is no room to claim that Peet acted in bad faith in defending against the suit of Mrs. Kinkead. Nor was the plaintiff, Kinkead, prejudiced in any manner by such defense. If the defense had been successful, it would have operated in his favor. The fact that Peet was compelled to pay this amount in order to get the property is the basis of his claim against Kinkead for the amount so paid out. Peet was held liable for the money as of March 1, 1905. The liability of defendant to him was presumptively commensurate with his liability to Mrs. Kinkead. Kinkead was not hurt by the delay in payment to Mrs. Kinkead. His liability was in no sense enlarged thereby. According to the majority opinion, his liability was substantially decreased thereby, and I am constrained to disagree with the holding at this point. There is another fact to be borne in mind. Since that litigation it has been adjudged that plaintiff's deed was intended as a mortgage. In prosecuting that litigation plaintiff, Kinkead, testified that the deed was intended to secure, not only existing indebtedness, but also money to be paid out by Peet in the future, and this included even alleged wages to be paid to Kinkead himself. He testified: "Everything he paid out was to be paid back. Of course, I was to pay interest on the amount of the indebtedness." Kinkead also testified that he requested or authorized Peet to pay the $3,000 to his wife, and that Peet did not agree to do so. This was prior to the time of the alleged oral agreement between Peet and Mrs. Kinkead as testified to by her. So that, according to the plaintiff's own contention, the title to the farm was to be held as security for such money as

might in the future, be paid out by Peet for the benefit of Kinkead.   Such an arrangement impliedly included interest as well as principal.

II.   When Peet took possession of the farm, the buildings thereon were in a dilapidated condition and in urgent need of repair.   Such repairs were made by Peet.   The principal repair consisted in putting in a cement floor in a cow barn in lieu of an old plank floor which had completely rotted away.   The actual expense of such repairs amounted to a few hundred dollars.   These are disposed of in the majority opinion by offsetting them against alleged waste.   I do not think this record would justify any allowance whatever to the plaintiff for alleged waste. Indeed, one of the claims of waste is that there were not sufficient repairs made.   I think the defendant should be allowed his reasonable expenditure for the repairs shown.

III.   The defendant caused about 1,100 rods of tiling to be put upon the premises at an expense of $400 or $500. This tiling was highly beneficial, and rendered tillable a portion of the ground the use of which was of no value whatever prior thereto.   This claim is disallowed by the majority on the theory that it involved an improvement rather than a repair.   The line between repairs and improvement is not always easily drawn.   In view of Kinkead's own showing, "that everything he paid out was to be paid back," we are not called upon to draw the line in the present instance.   The rental value of the farm has been charged to the defendant in its actual condition, and this includes tile.

It seems to me inequitable to permit the plaintiff to take the land without repaying the expenditure for this marked benefit.