F. E. L. HESTER, Appellee, v. GRONEWEG & SCHOENTGEN COMPANY, Appellant.

**ADVERSE POSSESSION:** Operation and Effect—Vested Rights—
1  Hostile Possession—Legalization Act—Effect. Vested rights un-

der adverse possession are in no wise affected by the subsequent legalization of a void deed antagonistic to such adverse possession.

PRINCIPLE APPLIED:    See No. 2.

CONSTITUTIONAL LAW:    Vested Rights—Adverse Possession—
2  Legalization of Hostile Conveyance—Effect.  A legislative legalization act which assumes to validate a deed may not be construed as passing title *as of the date of the act* when to do so would impair a vested right attaching subsequent to the date of the deed and prior to the date of the act.

PRINCIPLE APPLIED:    A county deeded swamp land to one McDonald, at a time when it had no title to the land—the title being wholly in the state of Iowa.  In the following year, the grantee mortgaged the property.  Later, the mortgage was foreclosed, the land sold, and a sheriff's deed issued to the purchaser.  Of this chain of title, no grantee was ever in possession of the land except McDonald.  Fifteen years later, the legislature legalized the deed from the county to McDonald, and declared that said deed should convey, not only the interest of the county, but of the state of Iowa as well.  It thus appears that in this act the state first parted with its title.  In the meantime, vested rights had attached because of the following facts, to wit:  In the year following the issuance of the sheriff's deed, the county (unlawfully, as the title still rested in the state), sold the said land for taxes, and a tax deed was issued to one Loose.  Loose took immediate possession, and he and his grantees continued in exclusive, open, and notorious possession at all times thereafter, under claim of right and under the color of title afforded by said void tax deed.  This adverse possession was of more than ten years' duration when the legislature legalized the deed to McDonald.

*Held*, the legalizing act could not be construed as granting title under the McDonald deed *as of the date of the legalizing act*, but only *as of the date of said deed*, because to so construe would render the act unconstitutional, as impairing the vested rights of said adverse holders.

ADVERSE POSSESSION:    Hostile Character—Color of Title—Void
3  Deed.  A *void* tax deed may give color of title.

*Appeal from Fremont District Court.*—E. B. WOODRUFF,
Judge.

SEPTEMBER 26, 1917.

REHEARING DENIED FEBRUARY 8, 1918.

ACTION to quiet title. Decree for the plaintiff. De-
fendant appeals.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross,* for appellant.

*Genung & Genung,* for appellee.

GAYNOR, C. J.—Plaintiff brings this ac-
tion to quiet his title to the north half of
Section 2, Township 70, Range 43 West of the
5th P. M., in Fremont County, Iowa. The
defendants appear, and contest plaintiff's
right to have his title quieted to the west half
of the northeast quarter of Section 2, and disclaim any inter-
est in any other portion of the land involved in plaintiff's
suit. The controversy, therefore, involves only the west
half of the northeast quarter of said section.

1. ADVERSE POS-
SESSION:
operation and
effect: vested
rights: hostile
possession:
legalization
act: effect.

Originally, this land was swamp land, and passed from
the United States to the state of Iowa under the Swamp
Land Grant of September 28, 1850. It does not appear that
the title to the land in controversy ever passed from the
state of Iowa to Fremont County, except as hereinafter in-
dicated. However, the record discloses that, in 1873, the
east half of the northwest quarter and the west half of the
northeast quarter were sold for the taxes of 1869, and a
tax deed issued by the county treasurer of said county to
James S. Easley. In 1878, Easley quitclaimed the same land
to Fremont County. Thereafter, in 1896, Mary E. McDon-
ald received a quitclaim deed from one Hurlbut to the north-
east quarter. Hurlbut does not appear to have had any
title. Thereafter, on November 11, 1895, Fremont County
made a quitclaim deed of the west half of the northeast
quarter and the northwest quarter of said section to Mary
E. McDonald. Mary E. McDonald and her husband, on
May 26, 1896, mortgaged the west half of the northeast
quarter of this land to one Hines. Hines assigned this mort-

gage to one Meeker. Meeker foreclosed this mortgage, and on October 2, 1897, decree of foreclosure was duly entered of record, and the property ordered sold under special execution. Special execution was issued and the same sold and a deed issued, in pursuance of such sale, to one John S. Schoentgen. This deed was dated January 14, 1899. On July 16, 1902, this John Schoentgen conveyed the west half of the northeast quarter, by warranty deed, to the defendants. This deed was duly recorded, and this is the deed under which the defendants claim the right to the west half of the northeast quarter. On the 25th day of June, 1900, the county again sold this land for state and county taxes, and executed a tax deed to one Loose. Thereafter, on or about March, 1901, Mary E. McDonald and her husband quitclaimed to one Marley, and Marley quitclaimed to Kephart, through mesne conveyances, to this plaintiff. On or about March 12, 1901, Loose and wife also quitclaimed the land in controversy to Marley.

On the 17th day of March, 1911, the legislature passed the following act (see Chapter 232, Acts of the Thirty-fourth General Assembly) :

"Whereas, a part of Buckingham Lake was located on a portion of the west half of the northeast quarter, and the northwest quarter of Section 2, Township 70 North, Range 43 West of the 5th P. M., in Fremont County, Iowa, and

"Whereas, Frank M. Kephart and his grantors have been in possession of all of said government sub-division for more than thirty (30) years, and have by drains, ditches and embankments reclaimed said lands at great expense, and have regularly paid state and county taxes on said land, and have paid large sums for the drainage of the same, and

"Whereas, the county of Fremont on the 11th day of November, 1895, conveyed said premises by deed to Mary E.

McDonald, through its board of supervisors, therefore:

"*Be it enacted by the General Assembly of the State of Iowa*:

"Section 1. The certain deed executed by Fremont County, Iowa, and its board of supervisors on the 11th day of November, 1895, and recorded on the 11th day of November, 1895, in Book 12, at page 275, of the Deed Records of Fremont County, Iowa, conveying the west half of the northeast quarter and the northwest quarter of Section 2, Township 70 North, Range 43 West of the 5th P. M., in Fremont County, Iowa, to Mary E. McDonald, is hereby declared valid, and to pass to the said Mary E. McDonald, her heirs, executors or assigns, all the rights and title and interest of the state of Iowa in and to said lands, as well as the interest of Fremont County, Iowa."

So far as is material to the consideration of this case, the record discloses that this land was swamp land, and passed from United States to the state of Iowa under the Swamp Land Grant of September 28, 1850. On November 11, 1895, Fremont County made a quitclaim deed of the west half of the northeast quarter and northwest quarter of said section to Mary E. McDonald. Mary E. McDonald and her husband mortgaged the west half of the northeast quarter of this land to one Hines. This mortgage was foreclosed, and the land sold under special execution to one Schoentgen, to whom subsequently a sheriff's deed was issued, January 14, 1899. In 1902, Schoentgen conveyed this west half of the northeast quarter to the defendants. In 1911, the legalizing act was passed, hereinbefore set out. It is under the foreclosure of this mortgage from McDonald to Hines, supplemented by this legalizing act, that the defendants base their title.

The plaintiff's paper title dates from this tax deed from Fremont County to Loose, on the 25th day of June, 1900.

Whatever paper title the plaintiff has is to be traced to this tax deed, through mesne conveyances from Loose.

It is apparent that, at the inception of both titles, so far as the record then disclosed, legal title was in the state of Iowa. The land was not, therefore, taxable, and Fremont County had no title which it could convey. Without this legalizing act, the quitclaim deed from Fremont County to Mary E. McDonald, under which she assumed the right to make the mortgage, passed no title, for the reason that no title was then in the county which it could pass to Mrs. McDonald. At the time the tax sale was made under which the Loose tax deed was executed, the title to the land was in the state, and therefore the land was not taxable, and the action of the county in taxing and selling the land was void, and passed no title. What is the effect of this legalizing act upon these respective claims?

*2. CONSTITUTIONAL LAW: vested rights: adverse possession: legalization of hostile conveyance: effect.*

Since the execution of the tax deed to Loose, the land has been in the continuous, open, adverse, and notorious possession of Loose's grantees. Loose's grantees have not only been in the open possession, but claim the right to possess under the Loose tax deed. The defendant never has been in possession, nor have any of his grantors since McDonald.

Assuming, for the purposes of this case, that the legalizing act did not validate the title conveyed under the Loose tax deed, and assuming that it did validate the title in Mrs. McDonald under her deed from the county, and that, as a legal sequence, it follows that it validated the mortgage given by Mrs. McDonald, under which these defendants claim, yet it is apparent from this record that the grantees of Loose under the tax deed have been in adverse possession of this land, claiming a right to take under this tax deed,—void though it may be,—ever since its execution, in 1900.

We are met at this point by the suggestion that an occupant cannot obtain title by adverse possession against the state; that, inasmuch as the title rested in the state at the time these grantees of Loose were in possession, the statute of limitations did not run against the state, and no length of possession would give them title as against the state. We answer this by saying that the plaintiff is not urging adverse possession as a basis of title against the state, but against those claiming under a deed executed by Fremont County in 1895, legalized by the state and made valid as a conveyance of the state's title in the land as of that date. This curative act was retroactive, and made the deed just as efficient to convey title from the state to Mrs. McDonald as though the state had joined in the deed at the time of its execution. This legalizing act of the legislature cannot be construed into an instrument passing title as of the date of the passage of the act, but rather should be construed as retroactive in its effect, and legalizing and making valid as a conveyance of the state's interests in the land, as of the date of the execution of the deed from Fremont County to Mrs. McDonald. This legalizing act, on its face, purports to make valid *the deed* from Fremont County to Mrs. McDonald, and make the instrument an instrument conveying whatever title the state had in the land, as of the date of the making of the deed. It is under this deed that the defendants are claiming, and it is against this deed that adverse possession is urged. We may concede that the defendants, through the foreclosure of the mortgage executed by Mrs. McDonald, supplemented by this legalizing act, acquired title; yet that title is traceable to the deed from the county to Mrs. Donald, under which she assumed authority to make the mortgage. It is this title that has been lost to these defendants, through the adverse possession of this plaintiff, for more than the statutory period, under a claim

of right and color of title. Though it may
be that the tax deed was void, yet a void
deed may give color of title, resting upon
which the adverse possession in good faith
for the statutory period may ripen into title.

3. ADVERSE POS-
   SESSION: hos-
tile character:
color of title:
void deed.

As said in *Chicago, R. I. & P. R. Co. v. Allfree*, 64 Iowa
500, 504:

"The defendant and his grantors claim title under the
tax deeds. They were invalid, void, on the ground that the
officers of the county had no authority to convey the land,
for the reason that it was not taxable. But their invalidity
for this reason does not prevent them from being regarded
as a foundation for a pretense, show, appearance, color of
title. Whatever may be the source of the invalidity of a
deed, if it purports to convey land, and 'in form passes what
purports to be the title, it gives color of title.'"

The same was held in *Colvin v. McCune*, 39 Iowa 502.

Therefore it follows that plaintiff did have color of
title, though perhaps no valid title. This color of title,
followed by adverse possession for the statutory period, is
sufficient on which to base a claim of adverse possession
against any citizen claiming title to the land adversely.
Concede the tax deed was void, concede possession cannot be
adverse to the state, yet we find the state urging no title to
this land. The state has deliberately, and by a solemn act
of its legislature, legalized the act of Fremont County by
which it undertook to convey title to this land to Mrs.
McDonald, and in the act declared that that deed should
be sufficient to pass to Mary E. McDonald, not only the
rights of Fremont County in the land, but all the rights,
title, and interest in the state of Iowa. It therefore was
clearly retroactive. It clearly made that deed, in and of
itself, a conveyance of all the title of the state in the land,
as of the date of the execution of the deed. This act, so
construed, impairs no vested rights, nor does it disturb any

vested rights. It does what the state could have done on the day the deed was made.

This court has said that legislation operating retrospectively to render binding and effective contracts before invalid is not in conflict with the Constitution, nor does it impair the obligation of contracts, where it does not attempt to disturb vested rights. See *Tilton v. Swift & Co.,* 40 Iowa 78; *State v. Squires,* 26 Iowa 340; *Burgett v. Norris,* 25 Ohio St. 308; *Chicago, R. I. & P. R. Co. v. Independent Dist. of Avoca,* 99 Iowa 556.

The court below found for the plaintiff on his claim of adverse possession. We think the court in this was clearly right.

Other matters urged as a basis for reversal relate to the action of the court in making up the issues. In the view we take of this case, we do not find these errors prejudicial to any rights of the defendant. Under the issues tendered, all rights were necessarily involved, and fairly presented and disposed of. We see no ground for interfering with the judgment of the court below, and the cause is —*Affirmed.*

LADD, EVANS, and SALINGER, JJ., concur.